No. 23—GEO. W. JORDAN, *et. al.* plaintiffs in error, *vs.* THOMAS POLLOCK, administrator.

[1.] Though testimony be improperly admitted, yet if in the opinion of the Court, the other evidence is sufficient to authorize the verdict which ought to have been as it was, independent of this testimony—a new trial should not be granted.

[2.] A deed cannot be delivered to the grantee as an *escrow*; but so to operate, must be delivered to a third person for him. A delivery to the grantee himself, vests the title in him.

[3.] No permission from the Court of Ordinary is needed as authority to an administrator, in order that he may institute his suit for land against a stranger. *Aliter* if he bring action against an heir.

[4.] It is most convenient, that *actual* notice to a purchaser should be defined, as 1. Such notice as is positively proven to have been given to him directly and personally. 2. Such as he is presumed to have received personally; because the evidence within his knowledge, was sufficient to put him upon inquiry. And *constructive* notice, is such as by judgment of Law, he is presumed to have received. A purchaser without such actual notice (as above defined) of a prior voluntary conveyance will be protected.

[5.] It is in the discretion of the Court, to allow a case to be re-opened after it has been closed, and before the argument.

[6.] Where several deeds have been handed by a grantor to R., one of his sons, in which he has conveyed to that son, and others of his children, various items of his property, and at the time of such delivery, the grantor says to him, "take them, and put them away until I call for them, for I am not ready to turn over the property, as the crop is not housed;" and afterwards a question is raised as to the delivery of his deed to R., who had been in possession of the land granted by it: *Held*, that the fact of the other deeds being found in possession of the other children (the grantees) was one from which a presumption might be derived, that his deed was delivered to R.

[7.] In such a case, it was not error for the Court to charge, that the circumstances under which the deed was handed to R., and his possession of the land, taken with all the other testimony, might be looked to as evidence of delivery.

[8.] Neither was it error in the Court to charge, that actual notice might be proven by the facts in the case, from which it could be inferred.

[9.] The mere cancelling of a deed, will not divest the title to land, which has once vested by transmutation of possession; nor will a re-delivery of the deed have this effect.

Ejectment, in Houston Superior Court.    Tried before Judge
Powers, April Term, 1853.

This was an action brought by Thomas Pollock, as administrator of Risdon Smith, deceased, against Geo. W. Jordan,
for the recovery of real estate, and to which George Walker
was made co-defendant.    Both parties claimed title under
Wm. Smith, the father of the plaintiff's intestate.    The
plaintiff, after the usual affidavit, introduced as witnesses,
Thomas Spaight, Lewis S. Spaight and Samuel Woodard, who
testified that they were present when William Smith executed
a deed to his son, Risdon Smith, for the land in dispute; that
at the same time, they saw him execute similar deeds to his
other children, for other portions of his estate.    That after
said deeds were duly executed and witnessed, they were handed by Wm. Smith to Risdon Smith, with instructions, " to take
them, and put them away until he called for them, for he was
not ready to turn over the property they conveyed—not at that
time, for the crop was not all housed."    This was in November,
1847.    The plaintiff then introduced Joseph Tooke, who stated
that in the fall of 1850, he had met Walker, the defendant,
who told him he had bought that land, (meaning the premises
in dispute.)    Witness asked him if he did not expect a difficulty about it; he said no, that he had taken legal advice before
he went into it; he told witness that he had given about five
thousand dollars for it, and thought he had bought a good
bargain.    Plaintiff then offered Garrett Smith, as a witness,
who being objected to as being one of the heirs at Law, of
Risdon Smith, the witness executed a release of all his interest
in the estate of said Risdon, so far as related to the property
now in dispute.    The defendant still objected to his competency, because he still had an interest in the general estate of
Risdon Smith, and the estate was liable for the costs of suit.
This objection was overruled by the Court, and the witness
was admitted.    He testified, that he saw Wm. Smith make
the deed spoken of by the other witnesses; that he saw
Risdon in possession of the deed, and of the land, in March

or May, 1848; that he died in July, 1849. The plaintiff having closed his testimony, the defendant moved the Court for a non-suit on the following grounds:

1st. Because there was no evidence of a delivery of the deed, alleged to have been made by William Smith to Risdon, for the premises in dispute.

2nd. Because the plaintiff had shown no order of the Court of Ordinary to sell the land, or to divide it among the heirs and distributees.

3rd. Because there was no evidence of actual notice to Walker, of the deed from William to Risdon Smith before he purchased.

The motion for non-suit was refused by the Court.

The plaintiff after having closed, and the Court having adjourned until the next day, then moved to re-open the case, for the purpose of introducing the several deeds which the witnesses had mentioned, as having been executed by Wm. Smith, at the same time with the deed to Risdon; to which defendant objected, but the Court allowed it to be done; and the said deeds, with testimony identifying them, were submitted to the jury, the defendant objecting to it all as irrelevant.

The defendant then offered the testimony of William Smith, to show that the deed to Risdon was never delivered; but the witness, on objection made, was held incompetent by the Court. He then introduced a deed from William Smith to George Walker, the defendant, conveying the land in dispute dated 8th April, 1850. The defendant then introduced the interrogatories of James McKinney, who stated, that in the summer of 1848, Risdon Smith had told witness, that his father had paid him in mules and negroes for the land in dispute.

The testimony being concluded, the defendants, by their counsel, requested the Court to charge the jury, that if the deed from William Smith to Risdon Smith, was directed by William Smith to be handed to Risdon Smith, to be locked up or put away until called for by him (the donor,) the possession of Risdon Smith, of the deed is *no evidence* of its

delivery, until the character of the possession is shown to have been changed. Which charge the Court declined and refused to give as requested, because it was some evidence, coupled with other evidence, such as possession of the land under the deed, and other facts that might appear, to which refusal defendants except.

The defendants also requested the Court to charge the jury, that in order to charge a subsequent purchaser for value, with notice of a prior voluntary deed proof that such purchaser had heard of a difficulty, without showing what difficulty was referred to, is not sufficient; but it must be shown, that such a purchaser had actual notice of the prior voluntary deed— which charge the Court refused, and declined to give as requested; but charged the jury, that they might infer actual notice from such facts, in connection with other circumstances, which would or might be sufficient to convince them, that defendant had actual notice, as proof in any other material facts, in a cause might produce conviction—to which refusal to charge as requested, and to which charge as given defendant excepts.

The Court charged the jury, that if they should believe that the deed from William Smith was delivered to Risdon, though never recorded, it was not competent for him and William Smith to re-vest the title in William, by tearing up of said deed or its destruction otherwise, so as to enable William Smith to sell to Walker; but that the title could only be re-vested by a deed of conveyance of equal solemnity, from Risdon Smith to William Smith—to which charge the defendants except. After the charge of the Court the jury retired, and returned with a verdict, in favor of the plaintiff for the premises in dispute, and $2,333 for mesne profits with costs of suit.

Whereupon the defendants, by their counsel, during the term aforesaid, after said verdict was returned, moved the Court for a new trial in said cause, on the following grounds, to wit:

1st. That the Court erred in opening the case, after the plaintiff had closed his case, and a motion to non-suit had

been disposed of; and a night intervened, to allow plaintiff to introduce the deeds of William Smith, for negroes to his children, the plaintiff not having the deeds in Court the day before.

2nd. The Court erred in admitting the said deeds for negroes from William Smith to his children.

3rd. The Court erred in admitting the evidence of Joseph Tooke, to go to the jury as evidence, to authorize the jury to find that George Walker had actual notice of the deed of gift, from William Smith to Risdon Smith, for the premises in dispute, before he purchased the premises of William Smith, for a valuable consideration.

4th. The Court erred in ruling, that it was not competent for Risdon Smith to have delivered back the deed to the premises in dispute, (after delivered though not recorded) to William Smith (the donor), and thus re-vest the property given in William Smith, so as to enable him to sell and convey to Walker; but that it must be done by deed of conveyance.

5th. The Court erred in refusing to grant the motion of defendants, (made when the plaintiff had closed his case) to non-suit said plaintiff.

6th. That the Court erred in refusing to charge the jury, that when the deed for the premises in dispute, had been proved to have been handed to Risdon Smith by William Smith to be locked up, or put away till called for by him; the possession of Risdon Smith is no evidence of its delivery, until the character of that possession is shown to have been changed.

7th. The Court erred in refusing to charge the jury as requested, that in order to charge a subsequent purchaser, for valuable consideration with notice of a former voluntary deed proof, that he had heard of a difficulty, without showing what difficulty was referred to, is not sufficient. But it must be shown, that such a purchaser had actual notice of the prior voluntary deed; but charged the jury, that they might infer actual notice from such facts, in connection with other circumstances, which would convince them that defendant had actual notice as in any other material facts in a cause.

8th. That the jury found contrary to law.

9th. That the jury found contrary to evidence.

10th. That the jury found contrary to the justice and equity of the case.

1Ith. Because the Court erred in deciding, that Garrett Smith, one of the heirs at law of Risdon Smith, was a competent witness; he being objected to on the ground of interest; the release of the witness being before the Court, as exhibited in the brief of testimony, and also the agreement of the heirs being before the Court.

Which motion was overruled and refused by the Court, on the several grounds therein contained and set forth, and defendants except and say, that the Court erred in refusing said motion for a new trial, and in overruling all the grounds therein contained.

Poe, Nisbet & Poe, and Giles, for plaintiff in error.

Warren, S. & R. P. Hall, for defendant.

Poe, Nisbet & Poe, for plaintiff in error, submitted the following brief:

1st. To the first point the following authorities are cited.— *Stewart vs. Grimes* (*Dudley Rep.* 209.)

2nd. To the second point, we contend that the delivery of the deed for the negroes is not a circumstance tending to show that the deed for the *land* was delivered, and more especially when it is shown that Risdon Smith repudiated the gift; and the covenant between the heirs proves that the land was restored to the estate of Wm. Smith.

3d. To the third point we cite the following authorities: 6 *Geo. Rep. Fleming vs. Townsend*, 107, 110.   8 *Geo. Rep. Colquitt vs. Thomas et al.* 268, 269.

4th. To the fourth point we cite the following authorities: 1 *Shep. Touch.* 70.   10 *Mass. Rep. Commonwealth vs. Dudley* 403, 406.   9 *Pick.* 105, *Holbrook vs. Trywell.*

The distinction here taken by Judge Parker, in which he

sustains the case of *Com. vs. Dudley* as directly applicable to this case.

5th. The fifth point will be sustained if the 3d and 4th objections are maintained, for it leaves the plaintiff without any course of action.

6th. The Court clearly erred in refusing to charge as requested in the 6th assignment, because the deed for the land was not delivered to Risdon Smith as an *escrow*, but to keep for the donor until he called for it. And the fact (if any such existed) that Risdon Smith was in possession of the land, does not cure the error of the Court below in thus refusing.

7th. To the seventh point, we contend that the Court erred in refusing to give the instruction asked, and in charging the jury that they might infer actual notice from the facts proven by Tooke, and other circumstances.

We cite the following authorities in support of the error in refusing to charge as above requested: 6 *Geo. Rep.*, *Fleming vs. Townsend*, 107. 110. 8 *Geo. Rep. Colquitt vs. Thomas et al.* 268, 269.

And that he erred in charging as he did, see 7 *Geo. Rep.* 503, *Butt vs. Maddox* § 3. 8 *Geo. Rep.* 117, *Bethune vs. McCray* § 2. 8 *Geo. Rep.* 183, *Montgomery vs. Evans* § 4. 9 *Geo. Rep.* 313, *Harrison et al. vs. Thompson* § 2. 10 *Geo. Rep.* 367, *Perry vs. Hudson*, § 3.

No other facts or circumstances going to show actual notice having been proved.

8th, 9th, 10th. The eighth, ninth and tenth exceptions depend for their support on the foregoing.

11th. To the 11th point we cite 1 *Greenleaf Ev. Sec.* 401, 402.

Brief of WARREN and HALL & HALL for defendant in error:

The deed having been delivered in this case by the grantor to the grantee is not an *escrow*, but the delivery is absolute. *Comyn's Dig. Tit* (*A.* 3) *Fait p.* 158. 2 *John's R.* 247, 248. 2 *Black. Comm.* 248 (*top*). 2 *Stark. on Ev.* 447. 23 *Wend.*

43.   2 *Kent's Comm.* 453, 454, 455.   5 *Cranch.* 351, (2d cond. 277).  1 *Sug. Vendor,* 312 (note) 13, and 14.   10 *Wend.* 310.   13 *John's R.* 285.    *U. S. Dig.* 30, *Nos.* 90, 93, 95. 7 *Cain. R,* 143.

Delivery of deed question of fact for the jury:  10 *Wend. et Supla.* 2 *I bid,* 308.   2 *Peter's Dig.* 30.    3 *Ma. C. C. R.,* 398.   11 *Geo. R.* 636.   6 *Peters,* 124.   1 *Watts,* 279.   9 *Mass. R.* 307.

Destruction of deed by grantor and grantee, or a return of it by the latter to the former, will not divest the grantee of title to the estate granted and re-vest it in the grantor.   13 *Mass. R.* 500.   4 *Wend. R.* 474.   *Ibid* 585.   9 *John's R.* 55.   12 *Ibid* 73, 488, 355.   2 *H. Black R.* 260.   1 *John's Ch. R.* 240.   6 *East,* 86.

That notice to Walker was sufficient see  6 *Ga. R.* 103, 10 *Ib.* 350.   2 *Sugden on vendors pp.* 335, 336, 337 *and note.* 1st. *Atk.* 489.   2 *White and T's leading ca. Eqi. pt.* 1 *pp.* 145, 132, 133, 174.

As to notice see further, 1 *Dana* 71.   4 *John's Ch. R.* 46. 15 *John's R.* 555.

That plaintiff's suit should not have been dismissed, for want of order of Court to sue for the land (no order being necessary to enable administrator to do his sworn duty in collecting intestate's estate) see 3 *Ga. R.* 105.

That there was no error in allowing the plaintiff to introduce evidence after the motion of non-suit, see 10 *Ga. R.* 143.   12 *Ibid* 257.

As to motion for non-suit, see 5 *Ga. R.* 171.

As to the finding of the jury, 3 *Kelly* 322.   6 *Ga.* 276. 7 *Ib.* 283.   8 *Ib.* 306.   10 *Ib.* 37.

As to Garrett Smith's interest and competency, see 1 *Kelly* 403.   3 *Ib.* 527.   *Ibid* 280.   8 *Geo. R.* 460.

Even though error in charge, justice having been substantially attained by the verdict, it will not be disturbed.   1 *Kelly* 580.   10 *Ga. R.* 209, 253, 429.

*By the Court.*—STARNES, J. delivering the opinion.

It is alleged, that the Court below erred in refusing the motion for a new trial, on various grounds, which we will review in the order in which the points were presented during the trial.

[1.] During that trial, one Garrett Smith, who was a distributee of Risdon Smith's estate, was offered as a witness by the plaintiff, (in the Court below,) who was the administrator on that estate.

Upon objection being made, on account of his interest, a release was tendered. Objection was then taken, that the witness was still interested to the extent of the costs of this suit. The meaning being, we suppose, that he was interested to prevent the fund, out of which he was to have distribution, from being diminished, by the payment of the costs in this case. The Court overruled the objection, deciding that the interest was too remote.

Now, the rule is, that the interest which disqualifies, shall be a present, certain and vested interest; and not uncertain or contingent—that the witness shall either gain or lose by the direct legal operation of the judgment; or that the record may be used in some other action, for or against him. If the interest be of a doubtful nature, the objection goes to his credit, and not to his competency.

We are not sure, but that the interest here, being contingent, is too remote. By the release, he has deprived himself of any gain, by reason of a judgment in favor of the administrator.— It is true, that in the contingency of a judgment against the administrator, the costs, being paid out of the estate, the witness' interest may be affected to this extent. Thus he may be said to lose in one event; but he cannot be said to gain in any event, unless the saving of the costs to the estate, may be said to be a gain to him.

However this may be, we will lay no stress on it; because, we are satisfied, from the investigation which we have given to this case, and for reasons which will hereafter appear, that no injustice was done by the admission of Garret Smith's testimo-

ny; and that the verdict should have been as it was, without it. Consequently, we should not feel it our duty to reverse the judgment on this ground, even if the testimony was improperly admitted. Such has been the uniform rule of this Court.— (*Stephens et al. vs. Crawford,* 1 *Kelly,* 580. *Arrington vs. Cherry,* 10 *Ga. R.* 429.)

After the plaintiff in the Court below, (the defendant here) had, in the first instance, closed his case, the defendants (plaintiffs in error) moved for non-suit, which was refused by the Court. As the grounds of this motion enter into the assignments of error, we will proceed to consider them, as they were presented.

[2.] It was insisted that no sufficient evidence of a delivery of the deed to this tract of land had been adduced.

Upon this question, we remark, that *prima facie* evidence of delivery, was fairly to be derived as an inference, from the acts and words of William Smith, taken with the subsequent possession of the land by Risdon.

Thomas Speight had proved, that after all the deeds were executed, Wm. Smith told Risdon "To take them, and put them away until he called for them, for he was not ready to turn over the property they conveyed at that time, as the crop was not housed." And other testimony showed, that Risdon was, after this, in possession of the land.

Here, certainly, was a delivery of these deeds. But it is insisted, that it was not an *absolute* delivery. If it were not an absolute delivery, it was a delivery to take effect upon conditions—that is to say, an *escrow.* No conditions, however, are here specified. The grantor says, that he is not ready to turn over the property, it is true. But he says nothing which, in law, can be considered as a technical limitation upon the delivery, so as to fix the time, upon the happening of a certain contingency, when the delivery is to take effect. And the grantees had nothing to do on their part, in order to make the deed absolute, which is usually the case, where the deed is delivered as an *escrow.* (*Austin vs. Hall,* 13 *John.* 285.) Under these circumstances, we fear, that to hold a transaction like this, such

a limitation of delivery as amounts to an *escrow*, would be to establish a loose and inaccurate precedent.

If, however, we be mistaken in this, it can only be, as to the deeds which were delivered to Risdon for the other grantees.— The delivery of his deed to him could not have been in the nature of an *escrow*; for a stubborn principle of law interferes to prevent this. One of those stern, technical rules, which the law, generalizing for the public good, establishes, as controlling intention, and serving as lights and guides to the wayfarer in search of legal rights. That rule is, that a deed can never be delivered to the grantee himself, as an *escrow*; but if intended to operate as such, must be delivered to a third person for him. If a deed be delivered to him, the law, for wise purposes, and on just principles, vests the interest conveyed, instantly in him. (*Shep. Touch.* 55. 7 *Vin. Tit. faits O. pl.* 4. *Jackson vs. Catlin,* 2 *John.* 259, *per Kent, C. J. Gibson vs. Partee,* 1 *Dev. & Batt,* 530.) Here, the delivery was to Risdon Smith himself, and it might have been properly looked to as absolute.

[3.] An order from the Court of Ordinary was not needed, that the administrator might bring his suit, as was also insisted on the motion to non-suit.

The point made here possibly springs out of a misconception of the decision made by this Court, in the case of *Carruthers vs Bailey,* 3 *Ga. R.* 105. While that decision [takes the position, (which was no new doctrine in our State,) that the Common Law of force with us, vests the title to real estate in the heirs, at the death of the ancestor; and asserts that the administrator can control it only for payment of debts, or distribution; it, at the same time, expressly holds, that for the purposes of distribution, such real estate is on the same footing with personal estate; and that " The title of the heirs is subservient to the right of the administrator, to have the possession of the land, to enable him to pay debts and make distribution," &c.

When, therefore, the administrator sues a stranger, the presumption arises, that he is acting in subordination to his au-

thority in the premises; that he is endeavoring to recover for the purpose of paying debts, or distributing; and no proof of authority from the Court of Ordinary is needed. It would be different perhaps, and so this Court has held, (at p. 111 of the case last cited,) if he were suing the heirs.

In this very case of Carruthers and Bailey, we remark further, this Court holds, in effect, that the administrator may sue in ejectment, without an order from the Court of Ordinary; and in *Cofer, adm'r.*, vs. *Flannagan*, 1 *Kelly*, 538, it is said that the right of the administrator to sue for land is established.

[4.] On the next point taken in the motion for non-suit, viz: that *actual* notice to the purchaser, Walker, was not proven, we have several remarks to make.

It is true, that if the plaintiffs in error, or either of them, had purchased the land from William Smith, without actual notice of the voluntary conveyance to Risdon, they should have been protected in their possession.

It is important, however, to a right consideration of this point, that we should first understand what clearly and definitely constitutes *actual* notice.

The first broad elementary distinction, to which we call attention, is that notice is actual, when it is directly and personally given to the party to be notified; and constructive, when the party, by circumstances, is put upon inquiry, and must be presumed to have had notice; or, by judgment of law, is held to have had notice. (*Powell on Mortg.* 561, 662. 16 *Vin. Abr.* 2. 4 *Kent Com.* 172.)

Again, constructive notice is held to be, "In its nature, no more than evidence of notice, the presumption of which is so violent, that the Court will not allow of its being controverted." (3 *My. & K.* 719. 3 *Sugd. on Vend.* 453.)

This first definition of constructive notice, it will be seen, involves such notice as presumptive knowledge, from circumstances which put, or should have put, the party upon inquiry; as well as the latter, which is entirely an inference of law, and may be supposed to relate generally to notice, which is legal inference, from some such source as matter of registry, or record.

With great deference and respect we say it, there does not seem to be sufficient and satisfactory accuracy in the terms of these definitions; and confusion has naturally resulted. It will be found, that some of these very authors and Courts, who draw these distinctions, and speak of all notice which is not proven by evidence of direct personal communication with the party as constructive notice; yet go on, sometimes, to call that actual notice, which is proven only by circumstances sufficient to put the party upon inquiry; and thus, parties and counsel, and Courts who follow them, may be puzzled to make out the correct distinction.

In the case before us, the ingenious counsel, following the general and more usual definition first stated, insist that, inasmuch as this Court, in the case of *Fleming vs. Townsend*, 6 *Ga. R.* 103, has held that a purchaser, without prior actual notice of a voluntary conveyance, shall be protected; and that " Constructive notice will not do;" and, as according to the above definition, all notice, not positively proven to be personal, is constructive notice—so in this case, as no such personal notice is positively proven to Walker, he must be protected.

It will be seen, however, as we have suggested, that these elementary dicta, and the cases cited, support the doctrine that that notice is sufficiently actual, which by the proof, either positive or presumptive, brings home to the purchaser such knowledge of the circumstances, as authorizes the clear and satisfactory conclusion, that he had notice of the prior incumbrance; or such as renders proper the conclusion, that he was, or should have been put upon inquiry. That such notice is, in the language of Sir Edward Sugden, "good notice;" and is so, because it authorizes a conclusion which affects the conscience of the purchaser, and makes it a legal fraud in him to buy, under the circumstances.

Loose, suspicious, vague rumors or reports will not do, say these writers; but the knowledge must be brought home to the party, so that *mala fides* marks the transaction, if he afterwards buy. (*Sugden on Vend.* 452, 467. *Peebles vs. Reed-*

*ing*, 8 *Serg. & R.* 484.  *Jones vs. Smith*, 1 *Hare,* 55.  *La Neve vs. LaNeve, Ambler*, 436.)  See also, the able notes on the last case in 2 *White & Tud. L. C. in Eq.* 130, 131, 132.

Hence, when our own Court adjudicates this point, it so draws the distinction between personal notice, proven either by positive or presumptive evidence, and notice which is a mere legal presumption, and which does not, as a consequence, necessarily affect the conscience of the party.  (*Fleming vs. Townsend*, 6 *Ga. R.* 103.)  And the intelligent editor of White & T. Lead. Cases, (2 *W. & T. L. C.* 174,) commenting on this last case, shows that this was the view taken by this Court.  Chancellor *Kent*, too, sanctions the same rule; and says, that if the conscience of the purchaser is thus affected by proof, "It is to be understood as the true construction of the rule, that implied or presumptive notice, may be equivalent to actual notice."  (4 *Kent Com.* 172.)

We will take leave of this point, by remarking, that it would, perhaps, be more accurate to say, that actual notice, in the case we have been considering, is shown, when the proof, positive or presumptive, authorizes the clear and satisfactory conclusion, that the purchaser had knowledge of the incumbrance, or would have had it, if he had not wilfully declined to search for it, and thus his conscience is affected by it; and that constructive notice, is that which arises out of a legal inference, or presumption strictly speaking, such as notice from a register, record, or some such matter; and which does not affect the conscience of the purchaser, because, notwithstanding the legal presumption, he may never have had absolute knowledge of the record, or been put upon inquiry in relation to it.

On looking to the testimony in this cause, we find a case which we think brings home to the purchaser, very clearly, the personal knowledge of the conveyance to Risdon Smith; for we find Tooke proving, that when conversing with Walker about the purchase, the latter said to him, that he had taken legal advice on the subject of the difficulty about this land, and that he thought he had bought a good bargain.

Now, to what difficulty as to this land, was reference thus

made ? There is no pretence, that it was to any other, save the incumbrance of the conveyance to Risdon; and all the facts of the case lead to this presumption. If he had taken legal advice then, as to this difficulty, must he not have heard, either before or through consultation with his learned counsel, that which put him upon actual notice of this deed ; or at all events, which made it his duty to inquire into the matter before he purchased ? Nay, was not the presumption very strong, that he did so inquire ? Besides, it appeared, according to his own report, that he bought a good bargain ; and this circumstance was significant in this connection.

These being our views, we think the Court committed no error in overruling the motion for non-suit.

[5.] Neither, in our opinion, did the Court commit error when opening the case, after plaintiff had closed, and permitting the introduction of certain deeds. This was a matter of practice, which must be more or less always within the discretion of the Court, and may be safely reposed there. We think the practice is not to be approved, and should be discountenanced by circuit Judges, as it leads to indefinite delays, and may sometimes open the door to unfair advantage. But we see no evidence, of any such advantage having been taken here, as in the case of *Stewart vs. Grimes and another*, *Dudley* 209, where the party had his testimony in Court, and as was said in this argument, " as it were gambled for the conclusion." So far as appears in this case, the omission of the testimony was through no improper motive, and the discretion of the Court in admitting it, was not abused or capriciously exercised.

[6.] Nor do we think the objection to these deeds as evidence tenable. They were relevant and material, as serving presumptively to show that the deed to Risdon had been delivered ; because these similar deeds, executed at the same time by William Smith, to other portions of his property, and which had been handed to Risdon with this deed, had been delivered to the grantees.

[7.] After. the cause was submitted to the jury, the Court

refused to charge, (when requested by the plaintiffs in error) that the circumstances under which the deed was delivered to Risdon, and the possession of Risdon did not amount to proof of a delivery; but instructed the jury, that it was some evidence when coupled with other evidence, such as possession, &c.

That this was substantially correct, we have already shown. That it was so, may be manifested, also, by reference to some of that other evidence, to which allusion was made by the Court below, viz: the possession of the other heirs under the deeds specified; and Risdon's statement, that his father had paid him for the land in horses, mules, &c.; which last circumstance was proven by McKinney. All of which taken together, constitutes strong evidence of delivery.

[8.] We hold also, that the charge of the Court, as to notice, viz: that actual notice might be inferred by the jury from the facts in evidence, which might be sufficient to convince them that defendant had actual notice, was for the reasons already given, substantially correct. To these reasons it may be added, that at the time the Court charged the jury, the fact of inadequacy of consideration (such as was insisted on) was before them, and also the character of that consideration, viz: a payment in three annual instalments—from both of which it was argued, that the *speculative* character of the transaction appeared, and therefore, notice should be presumed.

It is true, that if there was inadequacy in the consideration specified, it was a circumstance which might authorize the presumption insisted on. So too, was it true, that " to entitle a purchaser to protection, the consideration must not only be valuable, but must be wholly or partially paid." *Vattier vs. Hinde,* 7 *Peters,* 271, *per Chief J. Marshall. Williams vs. Hollingsworth,* 1 *Strob.* 103. *Bush vs. Bush,* 3 *Ibid.* 131. *Doswell vs. Buchannan's executors,* 1 *Speer Eq.* 20. 2 *Wash.* 141. 8 *Wheat.* 421. 3 *Serj & R.* 423.

If then, the terms of this deed authorized doubt or suspicion to say the least, by reason, that the consideration was slight, and the payments so arranged that the purchaser might take the chances of succeeding in a suit at Law, before having to

pay, this was proper for the consideration of the jury in determining the question of actual notice, and the Court was correct in referring the matter to their consideration.

[9.] We also approve the instruction which was given to the effect, that it was not in the power of Risdon Smith to revest the land conveyed to him, by re-delivering the deed to his father, after it had been once delivered to him, or by cancelling or otherwise destroying it; but that the title could be conveyed out of him to William Smith—only by deed with the usual solemnities.

Ancient elementary dicta, opposed to this instruction of the Court, have been and may be found. *Shep. Touch.* 70. *Co. Litt.* 119, *b. Dyer.* 59, 112. *Cro. Eliz.* 483. But the modern decisions almost invariably have held, that " The mere cancelling of a deed will not divest land, which has once vested by transmutation of possession." A mass of cases might be cited, but I can afford room for reference to a few only. *Boston vs. Carlisle*, 2 *H Black.* 263. *Roe vs. Archbishop of York*, 6 *East.* 86. *Dana vs. Newell*, 13 *Mass.* 498. *Holbrook vs. Tirrell*, 9 *Pick.* 108. *Botsford vs. Morehouse*, 4 *Conn.* 550. *Gilbert vs. Bulkley*, 5 *Conn.* 262.

The early dicta to which reference is made, are older perhaps, than the Statute of Frauds, which has been regarded as controlling this question; and hence the apparent conflict of opinion and of cases. To this effect speaks Mr. Justice *Sewell*, when he says, "In the ancient books are many dicta respecting deeds, which in modern cases have been either neglected or exploded—or so explained, as to be rendered consistent with the security of titles and demands depending upon written evidence, &c." *Hatch et al. vs. Hatch et al.* 9 *Mass.* 311.

On the whole, we are satisfied, that the Law was stated to the jury with sufficient fairness, and that the verdict of the jury (without reference to the testimony of Garrett Smith) ought to have been what it was; and that, therefore, a new trial should not have been granted.