Spear, J.
Of course the ultimate question is with respect to the sufficiency of the petition as tested by a general demurrer. As a primary question, irrespective of any claim of estoppel, what law governs the situation? Stated broadly, the question is this: Is the law determined by the constitution of the state of West Virginia, or by the will of the incorporators of the corporation? First, what is the paramount law of that state on the .question? If the constitution declares the law, then it would follow that no other expression with regard to the matter in issue can have serious consideration. The language of that instrument is: “The stockholders of all corporations * * * shall be liable for the indebtedness of such corporations to the amount of their stock subscribed and unpaid, and no more.” Naturally one would suppose that this language creates a liability on the part of the subscriber to stock in the interest of creditors, and that the amount subscribed means the amount as ascertained by the par value of the stock as fixed in the articles of incorporation. This construction is challenged by learned counsel for defendants in error and the claim is that as the provision does not use the word “par” it *329 cannot follow that par value is meant. True, the word “par” is not used, but no other term defining what is meant by the word “amount” in the phrase “amount of their stock subscribed” is used. Par value means face value. As given by Bouvier, the words “are commonly used to indicate the face value of bonds or stock,” and everybody knows that it is a current phrase expressive of this idea. The total capital stock is the amount of all the stock, and the amount of each separate share is the face value of such share. Conform-ably with this understanding, the capital stock of this corporation was “divided into twenty-five hundred shares of one hundred dollars each.” So that, when a person subscribed for one share of stock the amount of his stock subscribed was one hundred dollars. A further contention is that the clause of the constitution quoted is intended as an act of limitation and not of liability, and that the words “and no more” are really the controlling words in the entire section, being the only words that give any effect to that provision of the constitution since it did not require a constitutional provision to fix the liability of stockholders for any amount unpaid on their contract of subscription, that being the rule of the common law, but it did require the limitation “and no more,” for but for that limitation the legislature might enact laws fixing a liability beyond that of the amount subscribed. This proposition, with due respect, appears more specious than sound. It loses sight of the fact that, but for the constitution, the legislature might change the rule of the common law and exempt subscribers to stock from any liability whatever for unpaid subscrip *330 tions. • We think the natural, first-blush construction of this constitutional provision is the true one. It does limit the power of the legislature, denying that body the power in the fixing of liability to go beyond the amount of stock subscribed, but it does also determine that liability shall extend to the amount of the face value of the stock subscribed; in other words, it gives character to the contract of the subscriber, and this rule is irrevocable so far as any power exists in the legislature, or the corporation itself, is concerned. Nor does it appear by the petition that the legislature has undertaken to supply a different rule. The power given by the seventh provision of the statute quoted conferring authority upon the corporation to make “any provisions which the corporators might choose to insert for the regulation of the business and for the conduct of the affairs of the corporation, and any provisions creating, defining, limiting and regulating the powers of the 'corporation, the directors and. stockholders, or any class or classes of stockholders,” are all controlled by the closing sentence, which is: “provided, that such provisions be not inconsistent with the laws of the state.” And, as before stated, the constitution is the law, and the paramount law of the state.
In argument counsel cite section 24 of chapter 53 of the statutes of West Virginia relative to joint stock companies, quoting:
“Sec. 24. In no case shall stock be sold or disposed of at less than par, except by vote of three-fourths of all of the stock of the corporation outstanding at the time the vote is taken and not then until notice,” etc. * * * “But nothing herein *331 contained shall be construed so as to prevent any mining or manufacturing corporation subject to the provisions of this chapter from issuing stock or bonds and negotiating the sale of same, in payment 'of real and personal estate for the use of such corporation, and for its other corporate purposes and business, at such< price and upon such terms and conditions as may be agreed upon by the owners and the directors or stockholders of such corporation,” etc.
They also cite Bank v. Belington C. & C. Co., 51 W. Va., 60, where it is held that, under the above section, a mining corporation, after it is fully organized, may purchase property for corporate purposes and business at such price, upon such terms and conditions as may be agreed upon, and may pay by issuing so many shares of its capital stock to the vendor as are equal in amount at par value to the price agreed for the property, and the fact that the property is overvalued will not make the stockholders liable as for unpaid subscription until the transaction has first been impeached for fraud upon the corporation. We fail to see how either the section quoted or the decision aids counsel’s contention. The statute simply recognizes and regulates the power of the corporation to contract for property needed in its corporate business, authorizing the exercise of the judgment of the- corporation as to value, and the decision of the court sustains that clause of the act. We have no such case. It is to be noted, however, in passing, that the first clause of the section forbids the sale of stock at less than par except by vote of three-fourths of all of the stock of the corporation outstanding at the time *332 the vote is taken and not then until notice is given, evidently contemplating an emergency arising after the company has become a going concern. Apropos of such a condition the court in the above cited case at page 80 remarks: “When the stock is issued for cash at less than par, parties taking the stock are liable to corporate creditors for the unpaid par value thereof, unless the issue was subsequent to commencing business, and the real value was paid into the corporation to enable it to go on with its business instead of becoming insolvent.” No such situation is presented in the present case.
From the foregoing, and other kindred considerations which will readily occur, we are led to conclude that the constitution of West Virginia, the paramount law of that state, gives such construction to the contract of the subscriber to the stock of the' corporation as fixes, in the absence of any subsequent pertinent and controlling fact, a liability upon the stockholder for the amount unpaid upon his stock subscription. But it is urged that such pertinent controlling fact is shown. The fact insisted upon is that the articles of incorporation were required to be, and were, filed with the secretary of state of West Virginia, and thus became public property and open to the inspection of any persons who might become creditors of the corporation. In other words, all creditors are presumed to have knowledge of all the terms of the articles of incorporation, are presumed to have dealt with it in the light of such information, and are, in the absence of fraud (which is not pretended in the present case), es-topped to insist upon any liability inconsistent with *333 the provisions of the articles of incorporation. Supporting the first branch of this proposition, a number of .authorities are cited; that is, that the charter follows the corporation; as said by Morawetz, section 813, that creditors cannot complain of any transaction entered into by the company in accordance with the terms of its charter; that persons dealing with a corporation must be held to know its nature and chartered purposes; and hence they cannot complain of any modification of their rights, or of any dealing with the corporate assets which is expressly authorized by the company’s charter. And, as conclusion, this author says “that if the charter or laws under which a corporation was organized provide that the company may issue or sell its shares as fully paid up, on payment of less than their par amount into the company’s treasury, creditors would have no equitable right to insist on having the shares paid up at par.” But what is the charter? Does any lawyer doubt that the laws, constitutional or statutory, or both, of the state where organized enter into and become part of the articles of incorporation? The author above quoted states (section 318): “The articles of association of a company thus organized, taken in connection with the laws under which the organization takes place, form the constitution of the association,” etc. In the light of this principle the quotation first given from this learned author may well be accepted. But it comes very far short of a declaration that where the corporation introduces into its articles stipulations for the exemption of stockholders from constitutional liability, the creditors are necessarily bound by it. It is shown by the petition that the *334 principal place of business of this West Virginia corporation was at Ottawa, in the northwestern part of the state of Ohio, and it is. a fair inference that the stockholders generally resided in that vicinity. In other words, it was formed by Ohio people going to West Virginia to incorporate because the laws of that state imposed less liability upon stockholders for corporate debts than were then imposed by the laws of Ohio. It is also a fair inference that the creditors were people residing in the neighborhood of its principal business office, and it is wholly unreasonable to suppose that they, or any of them, did in fact consult the articles filed with the secretary of state at Charleston, West Virginia. Where a claim is made that creditors did have actual notice of the issue of the stock as fully paid stock the burden of showing that is on the stockholders. As held in Hospes et al. v. Northwestern Mfg. & Car Co., 48 Minn., 174: . “It is not necessary that a subsequent creditor should have alleged that when he dealt with the corporation he believed that the stock had been paid for, and that he gave credit on the faith of it. If in fact the creditor had knowledge of the arrangement at which the 'bonus5 stock was issued, that is a matter of defense to be set up by the defendant stockholder.55 But it is urged that such articles filed in the office of the secretary of-state were in any event constructive notice to them. Suppose that be so, of what are they notified? We suppose the rule to be well established that a public record is constructive notice of what the record may properly contain, and that it is not constructive ■ notice of that which is illegally placed in the article filed or recorded. It would *335 seem that the secretary might well have refused to file or record the instrument (The State, ex rel., v. Taylor, 55 Ohio St., 61). But, however that may be, we are of opinion that the record is not notice to creditors of that which the incorporators were incompetent to engraft upon the articles as affecting creditors. In other words, persons dealing with this corporation had the right to assume that it had, in its incorporation, conformed to the laws of West Virginia, and it 'is not within the power of such corporation to limit the liability of a portion of its stockholders for the debts of the corporation by a provision in the articles, unauthorized at least as regards creditors, thus attempting to relieve such stockholders and leaving the trusting creditors to “hold the bag.” If in any view the clause under consideration might properly find place in such articles, it should be construed as applying only to stockholders between themselves, implying an agreement that those who had bought at less than par, and paid, might receive dividends on the basis of fully paid stock and yet not be subject to further asséssment by the corporation itself. Any construction which would give the clause effect as to creditors would tend to work, whether so intended or not, a fraud upon the people by enabling the corporation to advertise itself as having a larger real capital than it in fact had; would be in effect a watering of the stock with no responsibility attaching to the excess issue, a result contrary to business morals and public policy; a. result inequitable even as between stockholders because giving to one- class a voting power out of proportion to the amount paid on their stock subscriptions. Using the language *336 of Mr. Justice McLean in Sturges v. Stetson, 1 Biss., at page 250, “the term fraud is here used in no other sense than as an act without the authority of law, and against the provisions of the charter, and this epithet legally applies, however innocently the act may have been done by the directors.” “The effect was a fraud upon the law and upon the other stockholders.” If the right to fix fifty per cent, as the amount to be paid by these original subscribers be conceded, no good reason could be urged against the right to fix any lower amount, thirty, twenty, or ten.
It is not proposed here to review all the cases cited by counsel for defendants in error, though all have been examined. In support of the claim respecting constructive notice special reliance is placed upon two cases which will be briefly referred to, Paper Co. v. Waples, 3 Woods, 34, and Brent v. Underdown, 156 Ind., 516. In the Paper Company case the statute of Louisiana provided that the articles should contain “a statement of the amount of the capital stock, the number of shares, the amount of each share, and the time when and the manner in which payment should be made,” and also provided that “no stockholders shall- ever be held liable or responsible for the contracts or faults of such corporation in any further sum than the upaid balance due to the company on the shares owned by him,” and “the balance of each share, or any portion of such share, shall not be called for unless with the assent of three-fourths of .the stockholders, and then only to increase the business of the corporation.” The statute also required a record of the articles in the recorder’s office and publication once a week for *337 thirty days at the domicile of the corporation. The articles so recorded conformed to the statute, and forty per cent, was required to be paid and was paid. No action was ever taken to call in or require payment of the remaining sixty per cent. The court held that after payment by the stockholders of forty per cent., and in the absence of a call by a vote of three-fourths of the stockholders, the stockholder was not liable to creditors. No comment is necessary to show the entire dissimilarity of. this case to our case, and its utter inapplicability to the questions under consideration. The language of the opinion in the Indiana case would seem to support the contention of counsel, although it is not shown by the report of the case what the statutory or constitutional provision in that state is. Counsel in argument supply this omission by citing section 5072 of the statutes of that state, which provides that stockholders shall only be liable for the amount of stock subscribed by them respectively. The decision, when the argument is reduced to the last analysis, apparently rests upon the conception that the creditor’s rights against the stockholders are measured by those of the corporation, and that such rights must be worked out through the corporation, a proposition to which we cannot give our assent. The argument of the learned court fails to satisfy us and we are unable to adopt its conclusions. Brant v. Ehlen et al., 59 Md., 1, is cited. The question in that case is whether as bona fide transferees of shares of stock issued by the company to the original subscribers as full-paid shares, and sold by them as such, the defendants were liable in an action by a creditor of the company for un *338 paid installments on said shares, though in fact they were not full-paid shares? Quite naturally, the court answers the question in the negative, but the case is many removes from our case. Peter v. Union Mfg. Co. et al., 56 Ohio St., 181, and Kulp v. Fleming, 65 Ohio St., 321, are cited. The first case was a controversy wholly between stockholders, wherein the court expressly disclaims any purpose to consider the rights of creditors, and the latter case deals with the provision of the Kansas statute which imposes a double liability on stockholders. Nimick & Co. v. Mingo Iron Works, 25 W. Va., 184, also deals with the matter of double liability. Neither case calls for more extended comment.
The learned and industrious counsel for plaintiff in error have cited to us a large array of authorities having more or less bearing upon the matters in dispute, a few only of which will be cited by us. Ooregum Gold Mining Co. v. Roper, et al., H. L. Appeal Cases, 1892, 123; Sturges v. Stetson, 1 Biss., 246; Cook on Stock, etc., Section 42; 2 Clark & Marshall on Corps., 1250; Sawyer v. Hoag, Assignee, 17 Wall., 610; Upton, Assignee, v. Tribilcock, 91 U. S., 45; Sanger v. Upton, Assignee, Id., 56; Webster v. Upton, Assignee, Id., 65; Pullman v. Upton, Assignee, 96 U. S., 328; Scovill v. Thayer, 105 U. S., 143; Handley v. Stutz, 139 U. S., 417; Camden v. Stuart, 144 U. S., 104; Wilbur v. Stockholders, 29 Fed. Cases, 1189; Sprague et al. v. National Bank, 172 Ill., 149; 24 Am. & Eng. Ency. Law, 142; Monroe v. Hamilton et al., 60 Ala., 226; Betser v. Rankin, 77 Ill., 289; Jordan et al. v. Pollock, Admr., 14 *339 Ga., 156; Grangers’ Ins. Co. v. Kamper, 73 Ala., 325; 7 Am. & Eng. Ency. Law, 4.
We hold, as conclusion, that the petition states a cause of action and that it'was therefore error in the court to sustain the demurrer as to any of the defendants and to render judgment for them. The judgment of the circuit court will be reversed and the cause remanded with directions to overrule the demurrer and for further proceedings according to law.

Judgment reversed.

Si-iauck, C. J., Crew, Summers and Davis, JJ., concur.