LEWIS et al. v. JONES et al.

In re RIVERSIDE FERTILIZER CO.

(Circuit Court of Appeals, Fifth Circuit. April 15, 1916. Rehearing Denied May 15, 1916.)

No. 2811.

1. MORTGAGES ⬳186(3)—PRIORITY—UNRECORDED MORTGAGE—NOTICE—BURDEN OF PROOF.

Under Civ. Code Ga. 1910, § 4530, providing that notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led, and that ignorance of a fact, due to negligence, is equivalent to knowledge in fixing the rights of the parties, and section 3260 providing that mortgages not recorded are postponed to all other liens, but that if the younger lien is created by contract, and the party receiving it has notice of the prior unrecorded mortgage, then the lien of the older mortgage shall be held good against him, the burden is on the holder of the senior unrecorded mortgage to show clearly actual notice of the mortgage to the former mortgagees.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 454; Dec. Dig. ⬳186(3).]

2. MORTGAGES ⬳186(5)—PRIORITY—UNRECORDED MORTGAGE—EVIDENCE—ACTUAL NOTICE.

Proof that mortgagees were informed before they took their mortgage that there was a prior mortgage against the property, but were not told that it was unrecorded, does not show such notice to the mortgagees of the existence of the senior unrecorded mortgage as gives it priority under Civ. Code Ga. 1910, § 3260, where it was understood by all the parties that the prior mortgage was to be paid off out of the money advanced to the mortgagors to clear the property of all prior liens, and before the mortgage was taken, the mortgagees' attorney made a search for all liens of record and inquired concerning outstanding accounts, but was not informed of the prior unrecorded mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 454; Dec. Dig. ⬳186(5).]

Walker, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of Georgia; William T. Newman, Judge.

In the matter of the Riverside Fertilizer Company, bankrupt. From a decree of the District Court, awarding priority to the unrecorded mortgage of George S. Jones and another, Charles B. Lewis, trustee in bankruptcy, and another, appeal. Reversed and remanded.

Clifford L. Anderson and Daniel W. Rountree, both of Atlanta, Ga., for appellants.

Orville A. Park, of Macon, Ga. (Hardeman, Jones, Park & Johnston, of Macon, Ga., on the brief), for appellees.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

FOSTER, District Judge. In this matter it appears the real estate surrendered by the bankrupt was burdened with a valid mortgage in

favor of the Pratt Engineering & Machine Company, executed September 27, 1912, and recorded September 28, 1912, for over $170,000 in principal, interest, and costs. George S. and Bruce C. Jones also held a valid mortgage on the same property, executed on April 17, 1912, and recorded October 16, 1912, for $3,500 and interest. Notwithstanding the Pratt mortgage was registered over two weeks before the Jones mortgage, the Messrs. Jones claimed priority on the ground of actual notice to the Pratt Engineering & Machine Company, and the District Court decided in their favor. From that decree the trustee and the Pratt Engineering & Machine Company have appealed.

[1, 2] The Georgia Code contains the following provisions:

"Sec. 4530. Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties."

"Sec. 3260. *Effect of Failure to Record.*—Mortgages not recorded within the time required remain valid as against the mortgagor, but are postponed to all other liens created or obtained, or purchases made prior to the actual record of the mortgage. If, however, the younger lien is created by contract, and the party receiving it has notice of the prior *unrecorded* mortgage, or the purchaser has the like notice, then the lien of the older mortgage shall be held good against them." (Italics ours.)

The burden was, of course, on the older mortgagees to clearly show actual notice to the junior mortgagees. From the evidence in the record, which is not in conflict, except as to certain conversations between the parties, it appears the bankrupt was building a plant, and, while the buildings were in course of erection, having some financial and other troubles in regard thereto, it entered into a contract with the Pratt Engineering & Machine Company to complete it. Before making the contract there was considerable negotiating between the parties, and it was thoroughly understood and agreed that the Pratt Engineering & Machine Company was to have a first lien on the property. To make certain of this, the Pratt Engineering & Machine Company, advanced $25,000 for the purpose of paying and clearing off all existing liens, or debts that might become liens, superior to its mortgage. In the beginning of negotiations Mr. Baxter Jones, a brother of the senior mortgagees and president of the Riverside Fertilizer Company, mentioned the claim of his brothers to the representative of the Pratt Engineering & Machine Company, Mr. Hurt, but stated it did not amount to anything and would be taken care of. Later on, at a conference at Atlanta, at which Mr. George S. Jones was present, he mentioned the mortgage as a claim that would have to be paid. At that time Mr. George S. Jones, who is an attorney at law, was interested in the completion of the plant, and was prepared to go to New York on behalf of the Riverside Fertilizer Company, to make other financial arrangements, if the negotiations then pending with the Pratt Engineering & Machine Company should fall through. Regarding this interview Mr. George S. Jones testifies (Record, page 38):

"We went downstairs, and he and Mr. Baxter Jones sat over at one table by themselves, Mr. Hall, Mr. Park, and I at another, while dinner was being brought in. Mr. Hurt and Mr. Baxter Jones finally came over to our table, and I inquired of Baxter how they were getting on, and so far as I

recollect this is about all that was said; Baxter said he hoped to be able to effect some kind of an agreement, but it would be necessary for him and Mr. Hall to dispose of the liens on the property. There was some talk about what liens there were on the property, and I stated to Mr. Hurt at that time, as I recollect it, at the table, that Bruce Jones and I held a mortgage on the property securing a $3,500 advance, and that that was to be taken care of among the others which had been mentioned. That, so far as I recollect, had not been mentioned up to that time; in fact, there was very little said."

There is a direct conflict between him and Mr. Hurt as to this conversation, Mr. Hurt denying that anything was said as to the Jones' claim being secured by mortgage. Mr. Park, the only disinterested witness, did not testify, and the testimony of Mr. Hall and Mr. Bruce Jones does not aid in solving the conflict. We will assume, however, that the conversation was as related by Mr. Jones; but beyond question it was understood by all parties present at this time that the Jones claim was to be paid out of the money advanced by the Pratt Engineering & Machine Company, and was not to remain as a ranking lien on the property. Before the transaction was completed the Pratt Engineering & Machine Company sent an attorney, Mr. George P. Whitman, to Macon, where the Jones mortgage would have been recorded, to search the records for all outstanding liens. He found some liens recorded, but not the Jones mortgage. He also looked over the books of the Riverside Fertilizer Company, saw the "bills payable" account, but no mention in the books of any mortgage. He discussed the recorded liens with Mr. Hall or Mr. Baxter Jones, officers of the Riverside Fertilizer Company, and nothing was said about the Jones mortgage. There is not a line of evidence to the effect that the Pratt Engineering & Machine Company was ever told the Jones mortgage was *unrecorded*. And there can be no doubt it was intended by all parties that it was to be paid out of the $25,000 loaned by the Pratt Engineering & Machine Company for the purpose of clearing off prior liens. Under all the circumstances, it is difficult to imagine what more the Pratt Engineering & Machine Company could have been expected to do. They were dealing with honorable men in a fair, open manner, and no doubt, but for some, untoward happening, undisclosed by the record, the Jones mortgage would have been discharged with the Pratt money. The universal rule regarding notice is well stated by the Supreme Court of Georgia in the case of Jordan v. Pollock, 14 Ga. 157:

"Loose, suspicious, vague rumors or reports will not do; * * * but knowledge must be brought home to the party, so that mala fides marks the transaction, if he afterwards buy."

Under the facts of this case there could be no suspicion of bad faith on the part of the Pratt Engineering & Machine Company, and the knowledge brought home to them at no time amounted to notice that the Jones mortgage was an active, adverse, unrecorded claim on the property, that might be defeated by the mortgage of the property to them.

Having reached this conclusion, it is unnecessary to pass upon the other assignments of error in the record.

The decree will be reversed, and the case remanded, for such other proceedings as may be necessary and in accordance with these views.

WALKER, Circuit Judge (dissenting). I am unable to come to the conclusion announced in the foregoing opinion. Before the mortgage to the Pratt Engineering & Machine Company was made, the representatives of that company were informed of the existence of a prior mortgage of the same property to George S. and Bruce C. Jones. Under the statutory provisions which have been quoted, this information had the effect of preventing the subsequent mortgagee acquiring a lien superior to that of the prior mortgage, unless the prior mortgagees by contract waived their rights under their mortgage, or, in favor of the subsequent mortgagee, estopped themselves from asserting those rights. It does not seem to me that anything in the record supports the conclusion that they lost their priority, either by contract or by estoppel. They did not agree to relinquish any right they had, and it is not made to appear that they said, did, or omitted to do anything calculated to mislead the subsequent mortgagee into the belief that, in acquiring its mortgage, it was getting a prior lien on the mortgaged property.