Brown et al. *v.* Welch.

---

DAVID BROWN *et al.*, Appellants, *v.* PATRICK WELCH, Appellee.

APPEAL FROM LA SALLE.

A party holding land under a recorded deed, to defend his title against a claimant under a previous unrecorded equitable title, must show that he has an equitable, as well as the legal title, and this must be sustained by proofs that he purchased the land in good faith, and actually paid for it before notice of the previous equitable title.

He must prove payment of the purchase money apart from the acknowledgment of the deed. Proof that the payment has been secured is not sufficient.

THIS was a bill in chancery, filed in the La Salle Circuit Court, by Patrick Welch, complainant, against Phineas D. Cooley, David Brown and John P. McCahan, respondents.

The bill charges, that on October 13th, 1855, Phineas D. Cooley made and delivered to Patrick Welch a bond for a deed for the land therein described.

Which bond was filed for record, December 12, 1855, at 11 o'clock, A. M., and duly recorded in book 45, pages 717 and 718, of records in La Salle county.

The bill further alleges, and the answers of Brown and McCahan admit the payment of $100, and the delivery of a team of horses at $325, mentioned in said bond, by said Welch to said Cooley, at the execution of the bond. And that Welch offered the defendants, Brown and McCahan, to perform to them his covenants with Cooley, contained in said bond, at the time stipulated, Cooley having previously left the state, which defendants, Brown and McCahan, refused to accept. The bill further alleges, that on October 26, 1855, Cooley conveyed to David Brown and John P. McCahan, the premises mentioned in said bond, by a deed of warranty; on the back of which deed was a certificate of registry that this deed was filed for record, October 29, 1855, at .8¼ o'clock, A. M., and duly recorded in book 44, page 710.

The bill charges that Brown and McCahan fraudulently purchased said premises and took their deed from Cooley, with notice that Cooley had before that time sold said premises to Welch, and of Welch's equitable rights under said bond. And that Brown and McCahan, well knowing the equitable rights of said Welch under said bond, and with intent to defraud him caused their deed from Cooley to be recorded, prior to the time that the deed of Welch from Cooley for the same premises was filed for record.

The bill prays for an answer from the defendants, the oath waived, and that Brown and McCahan may be decreed to convey said premises to Welch by deed, and that the deed from Cooley to Brown and McCahan be canceled and set aside as fraudulent and void.

The several answers of Brown and McCahan deny that they knew of the said bond or of the sale of said premises by Cooley to Welch, until the first week of December, 1855, when they were informed of said fact by Welch.

The said answers further set up that, on the 23d day of October, A. D. 1855, the said Cooley came to Brown and McCahan, both of whom then resided and still reside in the city of La Salle, in La Salle county, aforesaid, and offered to sell to them the said south half of the south-east quarter of section eighteen, in township thirty-five, of range one east, in said county of La Salle, for the sum of eight hundred dollars, and that they agreed with said Cooley that they would go on to the said land and see it; and accordingly they went together

on to the said land, and that there was no person in possession of said land; nor any appearance whatever of any person having lately been in possession, or about to be in possession of the premises. And Brown and McCahan further say, that they returned from said premises to La Salle on the same day, viz.: October 25th, 1855, and that on the morning following they offered the said Cooley the sum of seven hundred dollars for said premises, upon condition that the title to the same was in him, and was unincumbered, clear and good; that the said McCahan went to Ottawa, for the purpose of examining the record to ascertain, before they purchased, whether Cooley had the title to said premises, and had a good right to convey the same; that he returned from Ottawa and informed Brown that he had caused the records to be searched and examined for the purpose aforesaid, and found that the title to said premises was in Cooley, who had a good right to sell and convey the same; and that there were no incumbrances thereon; and thereupon, they jointly purchased from him for the sum of seven hundred dollars, and received a warranty deed for said real estate; and that deed was filed for record at Ottawa, on the 29th day of October, A. D. 1855. And they deny that at the time that they took their deed for said premises from Cooley, that they had any notice whatever, that he had previously sold the premises to Welch, or that Welch had any equitable right or interest in said premises, by virtue of the bond, or in any other way. They deny that, at the time of filing the deed for record, they knew of any equitable rights or interests of Welch in said premises, or that their deed was filed for record, with a view to defraud Welch, or to impair, in any way, his title to said premises, that he might have by reason of said bond. And that, it is not true that said Welch, immediately after the date of said bond, took actual possession of said premises, or that Welch had actual possession of said premises at the time Cooley deeded said premises to them, on the 26th day of October.

The complainant, Welch, files several replications to the answer of Brown and McCahan.

It is hereby stipulated that there is evidence in this cause, that David Brown, one of the defendants in this cause, returned from an examination of the premises in controversy, to La Salle, on October 25th, 1855, and that on the 26th of October, 1855, said McCahan went to Ottawa to examine the records of La Salle county, to ascertain if Cooley's title to said land was perfect, good and unincumbered, and that on said day said McCahan caused the said records to be searched for said purpose, and found that the title to said premises, as

appeared by said records, was in said Cooley, and that said land was not incumbered.

At the February special term of the La Salle Circuit Court, 1857, HOLLISTER, Judge of said court, decreed, that Brown and McCahan were trustees for Welch, and decreed that they should convey the premises in controversy to said Welch.

The defendants prayed an appeal to the supreme court.

D. P. JENKINS and O. C. GRAY, for Appe'lants.

CHUMASERO and ELDRIDGE, for Appellee.

CATON, J. We might, perhaps, satisfactorily place our affirmance of this decree upon the ground of notice proved to the subsequent purchasers, but we choose to place it on another ground. The complainant's equitable title to the land in question is clearly established, and indeed is not controverted, but the defense is placed upon the ground, that the defendants also have an equitable title, with which, although junior to that of the complainants, they have united the legal title. If this be true, their legal title must prevail over the complainant's mere equitable title. The question to be considered is, whether the defendants are subsequent *bona fide* purchasers, for a valuable consideration. This is for them to show in their defense, for the complainant has made out his case when he has made out his equitable title. I cannot better express the rule of law on the subject than by quoting the language of the supreme court of the United States, in the case of *Boon* v. *Childs*, 10 Peters' R. 211. After stating that a court of equity will protect the legal title fairly obtained, against a mere equitable title, however meritorious it may be, proceeds, "But this will not be done on mere averment or allegation; the protection of such *bona fide* purchaser is necessary only when the plaintiff has a prior equity, which can be barred or avoided only by the union of the legal title with an equity, arising from the payment of the money and receiving the conveyance, without notice, and a clear conscience. It is setting up matter not in the bill; a new case is presented not responsive to the bill, but one founded on a right and title, operating, is made out, to bar and avoid the plaintiff's equity which must otherwise prevail. 9 V. 33, 34. The answer setting it up is no evidence against the plaintiff, who is not bound to contradict or rebut it. 14 J. R. 63, 74; 1 Munf. R. 396, 397; 10 J. R. 544, 548; 2 Wheat. R. 383; 3 ibid. 527; 6 ibid. 468; 1 J. C. 461. It must be established affirmatively, independently of his oath. C. J. R. 559; 1 J. R. 590; 17 ibid. 367; 18 ibid. 532; 2 J. C. 87, 90; 4

B. C. 75; Amb. R. 589; 4 V. 404, 587; 3 J. C. 583. In setting it up by plea or answer it must state the deed of purchase, the date, contents and parties briefly; that the vendor was seized in fee and in possession; the consideration must be stated, with a distinct averment, that it was *bona fide* and truly paid, independently of the recital in the deed. Notice must be denied previous to, and drawn to the time of paying the money and delivery of the deed; and if notice is specially charged, the denial must be of all circumstances referred to from which notice can be inferred, and the answer or plea show how the grantor acquired title." The rule here laid down prevails with us, except as to the possession of the grantor, which has been dispensed with by our statute, but I have made the quotation principally to show that the duty devolves upon the defendants, to establish not only that they have a conveyance, legal in form, but that they have actually paid for the land. It is not sufficient even that they may have secured the payment of the purchase money. They must have paid it, in fact, before they had notice of the complainant's prior equitable title. The answer which was given upon the argument, to this objection was, that the bill only charges notice and does not charge that they had not paid the purchase money, or in any other way impeach their equitable right to hold their legal title. I have selected the case above referred to, because in that case the report shows that the bill was precisely like this, in the particular referred to. On page 206, the court says, "In the amended bill the plaintiffs charge the purchase from Newland and wife to have been made fraudulently and with notice of the title ;" and this is all the specification of fraud which is given. And such is the precise case here. The subsequent purchase, is charged to have been fraudulent and with notice. The substance of the charge is the fraud, which must be rebutted by the defendant, at least by the establishment of such facts as the evidence of which are supposed to be peculiarly within the possession or control of the defendant. Many of the cases state, that the defendant must show that they purchased without notice, but upon principle I do not think that they ought to be required to show this affirmatively, for that, from the nature of things in most cases, would be impossible, and especially in this state, where the party holding an equitable title may have it recorded; if he neglect to do so, and thereby give the legal notice of his interest to all the world, the presumption may well be indulged, that the subsequent purchaser had not notice. But the case is quite different when we come to the proof of the fact of the payment of the purchase money, which, as we have seen, is an essential element in that equity which must exist in order

to support the legal title which he attempts to uphold. The defendant must be presumed to be able to prove the payment of the purchase money, if he has made it, and there is neither hardship nor injustice in requiring him to make out his equitable claim, at least so far as he may be presumed to have the facilities for doing so. If he has not paid the purchase money, no wrong is done him by taking from him a legal title which has cost him nothing. If the title is taken from him and given to one who is meritoriously entitled to it, he will thereby be enabled to defend against his vendors' claim for the purchase money. Here even the answer does not aver that one dime of the purchase money has ever been paid, and hence it fails to show a sufficient defense to the case made by the bill and the proofs, and for that reason it might have been excepted to. But by waiving this objection to the pleading, the complainant did not waive his right to have a legal cause shown to defeat the equity shown by the bill and proofs.

We think it was incumbent on the defendants to have shown in their answer and by proofs, or if the insufficiency of the answer was waived, they should have shown by the proofs, at least, that they had paid for the land, and that hence they have, in good conscience, as much right to the land as the complainant, and that it would be as hard for them to lose what they had paid as for the complainant.

For the reason that the defendants have failed to show that they paid anything for this land, we cannot say that they have any equity to support their legal title, and that, consequently, they ought not to retain it against the equitable title of the complainant.

The decree must be affirmed.

*Decree affirmed.*