## BENJAMIN F. BETSER

*v.*

## MILES S. RANKIN.

1. PURCHASER—*when protected against equitable title.* Where the United States, after the sale of a tract of land and the giving of a receipt of the receiver for the purchase money, conveyed the same land with others to the State, and the State to the county in which the same was located, and the county sold and conveyed the same for a valuable consideration paid, after which the same passed through several *bona fide* purchasers, who had no notice whatever of the equitable rights of the party claiming under the purchase from the government, it was *held*, that the equitable title could not prevail over the junior equity which was united with the legal title.

2. NOTICE—*entry on tax books in county clerk's office.* The entry of lands sold by the United States upon the land book in the county clerk's office, being required only for the purposes of taxation, affords no con-structive notice of the facts appearing therefrom to subsequent purchasers.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. WILLIAMS, BURR & CAPEN, and Messrs. HAMIL-TON & SPENCER, for the appellant.

Mr. O. T. REEVES, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The bill in chancery, in this case, sets up that the United States, on March 24, 1854. owned the south-west quarter of section one, in township twenty-two north, of range six east, in McLean county, in this State ; that it was subject to entry at the land office in Danville. in this State ; that Daniel Wormeldorff entered the same on that day, paid $200 for it, and received the receiver's receipt therefor, whereby he became, in equity, the owner, and was entitled to a patent ; that afterward, January 9, 1858, the land was by mistake conveyed by the United States to the State of Illinois, as being unentered and swamp land, and January 26. 1858, was conveyed by the State to McLean county ; that on December 6, 1862, it was conveyed by the county to Charles E. Hovey, and that, by sundry *mesne* conveyances, his title has become vested in Miles S. Rankin. the defendant, now in possession of the land ; that complainant has the equitable title of Wormeldorff vested in him ; that Rankin only holds the legal title as trustee for complainant, and prays for the conveyance of it. Upon a hearing on answer, replication and proofs, the circuit court dismissed the bill. Complainant appealed.

There is no essential dispute as to, what as we regard, the material facts. On September 28, 1850, Congress passed an act to grant to the States in which they were situated, certain swamp and overflowed lands ; and the General Assembly of the State of Illinois, by an act approved January 22, 1852, granted such of said lands as were in this State to the counties in which they were situated.

An agent was appointed for the county of McLean, in which this quarter section is located, to select therein such lands as the county was entitled to under said legislation. The lands were accordingly selected, and among the lands so selected was the quarter section in controversy. The list of the lands selected, embracing this tract, was filed in the office of the Auditor of this State, March 16, 1852, and the

selection was approved by the Surveyor General for Illinois and Missouri, October 17, 1853, and by the Secretary of the Interior, October 29, 1857. On the 9th of January, 1858, a patent was issued from the United States to the State of Illinois for a large quantity of swamp lands, including the quarter section in question, and January 26, 1858, it, among other swamp lands, was conveyed by the State to McLean county. On the 4th of March, 1858, the county contracted to sell to one Charles E. Hovey this quarter section, for part cash and the balance in one and two years. Hovey paid for the land, and on January 6, 1862, the county conveyed its title to Hovey. He sold and conveyed the land to Amos Hovey, May 21, 1864, and the latter, on September 28, 1865, sold and conveyed the same to Leland A. Hovey, who, on June 9, 1866, executed a trust deed of the land to secure a loan of money, and on October 2, 1871, the quarter section was sold under the trust deed, and purchased by one George W. Monroe; and he, on the 13th of May, 1872, sold and conveyed the same to appellee, Rankin.

On March 24, 1854, Daniel Wormeldorff entered the same tract of land at the United States Land Office at Danville, in this State, receiving the receiver's duplicate receipt therefor— the books of the Land Office showing a subsequent cancellation of the entry. Whatever interest was acquired by Wormeldorff, is vested in the appellant.

We find it unnecessary to consider more than one of the several grounds of defense which have been urged in argument, and that is, that Rankin, as well as his immediate grantor, and his remote ones under the county, were *bona fide* purchasers for a valuable consideration without notice of the equitable title claimed to have been acquired by Wormeldorff.

This is an entirely satisfactory ground upon which an affirmance of the decree may be placed. There is no evidence whatever of actual notice on their part, or that of either of them, of the adverse claim which is here set up, and the proof distinctly negatives such notice. The land was unoccupied and

entirely unimproved until up to the time of Rankin's pur-
chase, when he immediately took possession of it, and has cul-
tivated it ever since. No evidence of complainant's alleged
equitable interest was ever recorded, and there is nothing to
affect Rankin, or the other purchasers under the county, with
constructive notice of complainant's claim. Admitting that
Wormeldorff's entry of the land was a valid one, and that he
thereby acquired a complete equitable title to the land, there
is no pretense that he ever obtained the legal title. That,
having been conveyed by the United States to the county of
McLean, and passed from the county to successive *bona fide*
purchasers under it for a valuable consideration without
notice, and being now vested in Rankin as such a purchaser,
he is entitled to hold the same without interference from a
court of equity. He has an equity, too, by reason of such a
purchase, and his junior equity having been fairly united
with the legal estate, will prevail over complainant's prior
equity. *Brown et al.* v. *Welch*, 18 Ill. 343 ; *McNary* v. *South-
worth*, 58 id. 473.

It is answered that the doctrine of *caveat emptor* applies
to all purchases from the government ; that all patents are
simply deeds of quit-claim, and convey no better legal or
equitable title than there might be in the government, and
that the doctrine as to an innocent purchaser does not apply in
such case. However this may be, we conceive it would only
apply to the immediate purchaser, and would not extend to
succeeding remote purchasers buying an apparently perfect
title of record.

As there was evidence that, as early as 1856 or 1857, there
was entered on the book of "land entries," (the record of lands
becoming taxable) in the county clerk's office of McLean
county, the name of Daniel Wormeldorff as the person who
had entered this land, with the date of the entry, and that
Wormeldorff, for some nine years, from 1856 to 1863, paid
the taxes on the land ; these facts, it is insisted, were suffi-
cient to put purchasers upon inquiry.

But to have any effect in that wise, the knowledge of the facts must have been brought home to the purchasers. They are facts which, in order to affect a purchaser, he must have actual notice of; there is no constructive notice of such facts. At that time, reports of the entries of public lands were certified by the Auditor to the several county clerks in the State; and the list of entries so furnished by the Auditor was copied by the clerk into his book of "land entries;" but all this was for the purpose of taxation, not of notice of the entries. No such effect of notice has been given by law to such report, or book of land entries.

Such entries, books and papers in the office of the county clerk are not constructive notice of their subject matter to subsequent purchasers. *Bourland* v. *The County of Peoria,* 16 Ill. 538.

There is no evidence whatever of any actual notice on the part of any of these purchasers under the county, previous to their purchase, of this entry of Wormeldorff's name in the book of land entries, or of his paying any taxes.

The defendant fully occupies the position of a *bona fide* purchaser for a valuable consideration paid without notice, and he is entitled to protection as such.

The decree dismissing the bill was right, and it is affirmed.

*Decree affirmed.*

Mr. JUSTICE SCOTT dissents.