CITIZENS STATE BANK OF NOBLESVILLE *v.* JULIAN
ET AL.

[No. 18,258.   Filed June 29, 1899.   Rehearing denied Jan. 9, 1900.]

MORTGAGES.—*Assignment.—Record.—Foreclosure.—Secret Equities.*—
Plaintiff brought suit to foreclose a mortgage, and to redeem the mortgaged premises from the lien of a senior mortgage. The facts found show that plaintiff's mortgage was assigned to him by the indorsement of the notes secured thereby, but such assignment was not recorded; that the first mortgage was foreclosed and the land sold in April, 1877, plaintiff's assignor being made a defendant, but

153   655
155   368
153   655
160   693
153   655
167   558

Citizens Bank v. Julian.

plaintiff was not made a party, and had no notice of the foreclosure proceedings. The act of 1877 (§§ 1107, 1108 Burns 1894) requiring assignments of mortgages to be recorded went into force July 2, 1877. The purchaser of the land at sheriff's sale held same for four years, and it was afterward awarded to defendant as one of the heirs of the purchaser, in a partition proceeding in lieu of her interest in his real estate, during which time plaintiff failed and neglected to record the assignment of his mortgage as required by said act. *Held*, that defendant was a purchaser for value, and that plaintiff could not enforce the mortgage against her. *pp. 656-674.*

MORTGAGES.— *Assignment.* — *Record.*— *Foreclosure.* — *Redemption.*— *Evidence.*—*Burden of Proof.*—A mortgage was assigned by the indorsement of the notes secured thereby, and the assignment was never recorded. A senior mortgage was foreclosed and the real estate sold without making the assignee of the junior mortgage a party. *Held*, in an action by the assignee to enforce the junior mortgage, that the burden was upon plaintiff to prove that the purchaser had notice or knowledge of the assignment at the time of his purchase of the real estate. *pp. 674-676.*

SPECIAL FINDING.—*Where Finding is Silent on a Fact in Issue.*— Where the special finding is silent upon a fact in issue such silence will be regarded as the equivalent of an express finding against the party having the burden of proof on such issue. *p. 676.*

APPEAL AND ERROR.—*Bill of Exceptions.* — *Evidence.*—*Record.*— Where it does not affirmatively appear from the record that the bill of exceptions containing the evidence was presented to the trial judge within the time allowed for presenting same, and such bill was not filed with the clerk within such time, it cannot be considered as part of the record on appeal. *pp. 676, 677.*

From the Delaware Circuit Court. *Affirmed.*

*F. E. Gavin, C. F. Coffin, Theo. P. Davis* and *J. L. Gavin,* for appellant.

*D. W. Howe, J. W. Ryan* and *W. A. Thompson,* for appellees.

JORDAN, C. J.—Appellant commenced this action in the Jay Circuit Court on June 1, 1893. The venue thereof was subsequently changed to the Delaware Circuit Court. The purpose of the suit was to recover a personal judgment against Jacob B. Julian upon certain promissory notes executed by him, and to obtain the foreclosure of a mortgage

on certain lands in Jay county, Indiana, executed to secure the payment of said notes.

The plaintiff in its complaint also set up and demanded the right to redeem the mortgaged premises from the lien of a senior mortgage. All of the defendants, except Jacob B. Julian, Amanda T. Whitson, and The Elm Peeler Oil Company, filed disclaimers. The last two named defendants filed answers to the complaint. On the issues joined, there was a trial by the court and a special finding of facts and conclusions of law in favor of these two defendants. A personal judgment was rendered in favor of appellant against Julian on the notes for $8,950. The right of appellant to foreclose its mortgage, or to redeem from the lien of the senior mortgage, was denied by the court.

The errors assigned are in respect to the conclusions of law on the facts found, and upon the action of the court in denying appellant's motion for a new trial. The material facts as found are substantially as follows: On July 27, 1876, Jacob B. Julian was the owner in fee simple of the undivided one-half of eighty acres of land situated in Jay county, Indiana. On that day he executed to one George H. Bonebrake three promissory notes, payable in bank, each for $1,000, due in three, nine, and fifteen months respectively after date, bearing interest at ten per cent. per annum. On the same day Julian and wife, to secure the payment of these notes, executed to Bonebrake the mortgage in suit upon his interest in the aforesaid eighty acres of land. This mortgage was duly recorded, within the time provided by law, in the recorder's office of Jay county, Indiana. On July 29, 1876, for a valuable consideration, Bonebrake sold and assigned these mortgage notes by indorsement to the appellant, the Citizens State Bank of Noblesville. There was no assignment of the mortgage by Bonebrake to appellant other than that which resulted from the assignment of the notes secured thereby. No record of any kind was ever made of

such indorsement upon any of the records in the recorder's office of Jay county, Indiana, nor was any assignment of said mortgage ever recorded in the latter office. On January 11, 1877, one William T. Macy sold and assigned to Calvin W. Diggs certain notes secured by a prior and duly recorded mortgage on the lands in question executed in 1874, which mortgage was a valid lien on the lands in controversy at the time Julian became the owner thereof. On March 18, 1877, Diggs, as the holder of said senior mortgage and the indebtedness secured thereby, instituted an action in the Jay Circuit Court to recover a judgment on his said notes and to foreclose the mortgage securing them. To this action Bonebrake was made a party defendant, as a junior mortgagee, but appellant was not made a party to that action, and had no notice of its pendency. In that action, Diggs recovered a judgment on his notes and a decree foreclosing his mortgage and ordering the sale of the mortgaged premises in satisfaction of the judgment recovered. On April 7, 1877, the land was sold by the sheriff under this decree to Diggs for the sum of $1,150.72. Diggs, at the time he purchased at the sheriff's sale, had no knowledge or notice that Bonebrake had assigned the note, secured by the junior mortgage, to appellant. After the expiration of the year allowed for redemption, Diggs, it seems, received a sheriff's deed conveying the land to him under said sale. The latter held this real estate until May 24, 1881, when he sold and conveyed it by warranty deed to James Moorman for a valuable consideration. The latter, at the time of his purchase of the land from Diggs, had no notice of the assignment, in the manner stated, of the Julian mortgage by Bonebrake to appellant. Moorman, after holding the land for several years, died the owner thereof, and his last will and testament was on the 4th day of October, 1888, duly probated in the Randolph Circuit Court. By his said will, Moorman devised to certain devisees, including the heirs of Nancy Thomas, one of her heirs being the appellee Amanda T. Whitson, all of his lands

situated in Wayne and Jay counties, Indiana, embracing the real estate in controversy. After the will of James Moorman was probated, a partition suit was instituted in March, 1889, by the devisees of the said Moorman, and partition of the real estate so devised by him was ordered and a part thereof was set off jointly to certain ones of his devisees, including the appellee Amanda T. Whitson, and the land now in controversy was embraced in and set off in said partition. This partition was duly confirmed by the court. Afterwards, in the Wayne Circuit Court in September, 1889, proceedings to partition the land, which had been previously set off in the Randolph Circuit Court to certain devisees of said Moorman, including the appellee Amanda T. Whitson, were instituted, to which all of the persons interested in the lands sought to be partitioned were made parties. The court in this latter action awarded partition of said lands among the parties, and the commissioners appointed by the court set off and assigned in severalty to the appellee Amanda T. Whitson, as her moiety of the lands embraced in said partition proceedings, the real estate which is now involved in this action. This partition was duly confirmed by the Wayne Circuit Court.

The first and second conclusions of law upon the facts found by the court are to the effect that Calvin W. Diggs, James Moorman, and the appellee, Amanda T. Whitson, were innocent purchasers of the real estate described in the complaint, and that plaintiff was not entitled to foreclose its mortgage against said lands, and that the latter are not liable to the said mortgage lien.

There are but two principal questions involved in this appeal: (1) Was appellant, as the assignee of the mortgage notes from Bonebrake, required to enter of record an assignment of such mortgage after the taking effect of the act of the legislature which was in force on the 2nd day of July, 1877? (2) If the above question be answered in the affirmative, is the appellee, Amanda T. Whitson, under

the facts, entitled to be protected against appellant's mortgage as a good faith holder or owner of the lands in controversy?

The act of 1877, requiring the assignment of mortgages to be recorded, was approved March 6th of that year and went into effect, as previously stated, on July 2nd, following. The provisions of that statute are embraced in §§1093, 1094 R. S. 1881, and Horner 1897, §§1107, 1108 Burns 1894. These sections are as follows:

"§1107. Any mortgage of record, or any part thereof, may be assigned by the mortgagee, or any assignee thereof, either by an assignment entered on the margin of such record, signed by the person making the assignment and attested by the recorder, or by a separate instrument executed and acknowledged before any person authorized to take acknowledgments, and recorded on such margin, or in the mortgage records of the county, in which case such assignment shall be noted in such margin by the recorder, by reference to the book and page where such assignment is recorded. And after such entry is made of record, the mortgagor and all other persons shall be bound thereby, and the same shall be deemed a public record. And any assignee or his personal representative may enter satisfaction or release of the mortgage, or the part thereof held by him of record as aforesaid.

"§1108. And in a suit to foreclose said mortgage, it shall be sufficient to make the mortgagee, or the assignee shown by said record to hold an interest therein, defendants. And all persons failing to cause assignments to them to be made or put of record in the manner aforesaid, unless they cause themselves to be made parties pending the action, shall be bound by such decree as may be rendered, the same as if they had been parties to the suit. And any purchaser at judicial sale of the mortgaged premises, or any part thereof, under such decree, or claiming title under the same, buying without actual notice of any assignment not thus of record,

Citizens Bank *v.* Julian.

or of the transfer of any note, the holder whereof was not a party to the action, shall hold the said premises, so purchased, free and discharged of such lien : *Provided, however,* That any assignee or transferee may redeem said premises, like any other creditor, during the period of one year allowed by statute after such sales."

At the time of the assignment of the notes by Bonebrake to appellant, the bank, on July 29, 1876, and at the time of the foreclosure of the senior mortgage by Diggs and the purchase of the said mortgaged premises by him at the sheriff's sale, there was no law, according to the decisions of this court, which required the assignment of a mortgage to be recorded upon the public records, thereby making such recording constructive notice to any and all persons concerned.    Therefore, previous to the enactment of the above statute in 1877, a party who was an equitable assignee of a mortgage, as was appellant, could not be deemed to be guilty of laches in failing to record an assignment of his mortgage and could not be held to have lost any of his rights by such failure.    *Hasselman* v. *McKernan,* 50 Ind. 441; *Dixon* v. *Hunter,* 57 Ind. 278; *Reeves* v. *Hayes,* 95 Ind. 521, and cases there cited.

We may, however, say in passing that were this question an open one we would be inclined to hold that, under the law, as it existed prior to the taking effect of the act of 1877, an assignment of a mortgage was required to be recorded in the recorder's office where the mortgage assigned was of record, in order to operate as constructive notice.

The able and well considered dissenting opinions of Judges Niblack and Zollars in *Reeves* v. *Hayes, supra,* might be accepted, we think, as a clear interpretation of the law on that subject, and it is evident that this court was led into error in asserting a rule to the contrary.    Be this as it may, however, the legislature, by interposing and enacting the statute of 1877, to supply what this court had previously considered as an omission in our registry laws, has rendered the rule,

at this late day, no longer of any general importance. We therefore abide by it as the law and enforce it in this case so far as applicable under the facts.

A solution of the principal question as here involved depends upon whether or not appellant, under the circumstances, was bound by the act of 1877 after it went into force, and was therefore required to record an assignment of its mortgage, in order to affect parties with constructive notice thereof claiming as *bona fide* purchasers or holders of the title to the mortgaged premises. That the assignment by Bonebrake of the notes, secured by the mortgage, to appellant served to operate as equitable assignment of the mortgage to the latter of course is not and can not be denied. This equitable rule or doctrine, which holds that a mortgage is but the incident or shadow of the debt secured thereby and passes with the assignment of the debt to the assignee, has been repeatedly recognized and affirmed by the decisions of this court. *Felton* v. *Smith*, 84 Ind. 485; *Reeves* v. *Hayes*, 95 Ind. 521, and cases there cited; *Midland R. Co.* v. *Wilcox*, 122 Ind. 84.

It is firmly settled as a general rule by our decisions that where a junior mortgagee is not a party to the action to foreclose a senior mortgage, his equity of redemption is not barred or affected by the decree. *Holmes* v. *Bybee*, 34 Ind. 262; *Gordon* v. *Lee*, 102 Ind. 125, and cases there cited. Appellant, therefore, being regarded under the law as the assignee of the junior mortgage, at the time Diggs foreclosed his senior mortgage, ought to have been made a party to such foreclosure proceedings in order to be bound by the decree, regardless of the fact that Diggs had no notice of the assignment made by Bonebrake, who appeared of record as the mortgagee under the junior mortgage. The senior mortgage held by Diggs, by reason of the fact that appellant was not a party to the foreclosure action, remained unforeclosed as to appellant.

Conceding, that, unless the act of 1877 operated, after the event of its taking effect, to make it the duty of appellant to record an assignment of its mortgage, appellee must fail in her defense; therefore the effect of this statute, under the circumstances, becomes an important factor in the determination of the question involved in this case.

The insistence of appellant's learned counsel is that the act of 1877 can not be so construed as to avail appellee in this action, because the notes secured by the junior mortgage were assigned to appellant, and the foreclosure of the senior mortgage and the sale of the land thereunder all occurred prior to the taking effect of that statute. It is further contended that the act in question does not profess by its terms to be retroactive and can not be so construed; therefore the insistence is that it must be confined in its operation and held to apply only to assignments of mortgages made on or after July 2, 1877, the date of its taking effect. The contention is further advanced that if the law can be said to apply to assignments made prior to that date, it must be held invalid as to such because no time is given or provided in which to record them.

Counsel for appellee do not contend that the law must be held to retroact to the extent of requiring assignments of mortgages to be recorded before it took effect, but they insist that the act assumes to have and has such a control or regulation over assignments previously made as to require them to be recorded, at least within a reasonable time after it took effect; and it is contended that inasmuch as appellant had ample time after that event, before Diggs transferred the land to Moorman and before the partition in question took place, to comply with the requirements of the law and record the assignment of its mortgage, and, having failed therein, it must suffer for its laches and can not now enforce any rights under its mortgage to the detriment of a purchaser for a valuable consideration of the mortgaged premises who had no actual notice of the assignment.

It is true as a general rule that a statute will not be construed to operate retroactively so as to change or affect existing rights, unless its language is such as to require it to be so construed. *Niklaus* v. *Conkling*, 118 Ind. 289; *Goodbub* v. *Hornung*, 127 Ind. 181. But where, under the statute, no new right is given or taken away but only a new remedy is provided for the enforcement of a preëxisting right, the question in such a case is, what is the purpose of the statute? If necessary to carry out such purpose courts will construe the statute to apply to past as well as to future transactions, although it does not in express terms so direct, unless by doing so vested rights will be impaired or some constitutional guaranty violated. As a general rule, registry laws which regulate the registration of existing deeds or other instruments affecting title to real estate are not held to be within the operation of this rule when a reasonable time is given to carry out their requirements as to registration of such existing deeds or instruments, and thereby avoid the impairment of vested rights. *Connecticut Mutual Ins. Co.* v. *Talbot*, 113 Ind. 373, and cases there cited.

It is insisted by counsel for appellee that the holding of this court in the appeal of *Connecticut Mutual Ins. Co.* v. *Talbot, supra,* must exert a controlling influence over the question involved in the case at bar. The facts in that case, briefly stated, are as follows: Talbot in 1871 executed a mortgage on certain lands to the Thames Loan & Trust Company to secure a loan of $3,000 due in May, 1876. This mortgage was duly recorded. In January, 1874, Talbot executed a second mortgage on the same premises to one Morrison to secure a debt of $3,000 evidenced by a promissory note due and payable to Morrison one year after date. This mortgage was also duly recorded. Before the maturity of this mortgage note, Morrison assigned it by indorsement to one Tomlinson. There was no assignment of the mortgage other than the equitable assignment thereof which resulted from the indorsement of the note secured thereby.

The note assigned to Tomlinson was annually renewed by Talbot executing a new note to Tomlinson of like tenor as the one assigned. The renewal notes were each indorsed by Morrison. The latter died in March, 1881, and his widow became the administratrix of his estate. The debt secured by the senior mortgage to the Loan and Trust Company being past due, Talbot secured a loan of $3,000 from the Connecticut Mutual Life Insurance Company for the purpose of paying and discharging the debt secured by the senior mortgage. Mrs. Morrison, as the administratrix of her deceased husband's estate, on October 11, 1881, executed and recorded a release of the junior mortgage which had been assigned in the manner stated to Tomlinson. The latter had no knowledge of this release of his mortgage and had given no authority to any one to release it. On the same day Mrs. Morrison released the junior mortgage, Talbot, as the owner of the mortgaged premises, conveyed them to the said insurance company as a security for a loan of $3,000 and this money so obtained was paid over by him in satisfaction of the senior mortgage held by the Loan and Trust Company. It appears that no assignment of the junior mortgage by Morrison to Tomlinson was ever recorded and the insurance company at the time of loaning Talbot the $3,000, accepted his mortgage as security therefor without any actual knowledge of the assignment of the junior mortgage by Morrison to Tomlinson. The release executed by Mrs. Morrison, as administratrix, recited that the mortgage had been fully paid and satisfied, and the insurance company, at the time it made the loan to Talbot and accepted his mortgage therefor, had no notice that the junior mortgage had not been actually paid and satisfied. Under these facts it was held by this court in that appeal that the aforesaid act of 1877 applied as well to mortgages of record at the time of its taking effect, but which had been assigned before that event, as it did to those assigned thereafter, and it was adjudged in that case that the mortgage executed by

Talbot to the insurance company, after the release of the
Morrison mortgage held by Tomlinson, under the equitable
assignment, was entitled to be preferred over the latter. It
was contended in that case, as in this, that because the debt
secured by the Morrison mortgage had been assigned prior
to the taking effect of the act of 1877, Tomlinson, the
assignee, was not affected by its provisions and was not
required thereby to record an assignment of the Morrison
mortgage. This contention this court in that case denied.

Mitchell, C. J., speaking as the organ of this court in
respect to the question therein involved, said: "Whatever
conclusion we might arrive at, as at present advised, in
respect to whether or not assignments of mortgages were
within the recording act prior to July 2, 1877, there is no
room to doubt but that such assignments are affected by the
act last above named. * * * It is assumed everywhere,
that if the recording acts afford the assignee of a mortgage
opportunity of giving notice of his rights by procuring and
putting of record an assignment of the mortgage, neglect
on his part to do so will estop him from asserting the inva-
lidity of a duly recorded release executed by his assignor,
after an innocent purchaser has paid his money on the faith
of the public records. It is settled everywhere, that unre-
corded assignments of mortgages are void as against subse-
quent purchasers, whose interests may be affected thereby,
and whose conveyances are duly recorded, provided such
assignments are embraced by the recording acts. [Citing
authorities.] * * * The effect of the act of 1877, construed
in connection with §2931 R. S. 1881, was to postpone or
render assignments of mortgages void as against any subse-
quent purchaser or mortgagee in good faith, for a valuable
consideration, unless such assignments were recorded as
therein provided. It follows, that when assignments of
mortgages are within the recording acts, a release executed
by the person who appears by the records to be the owner
of the mortgage is sufficient to protect a purchaser who has

in good faith parted with his money on the faith of such a release, and without other notice than that afforded by the record. *Blunt* v. *Norris*, 123 Mass. 55. * * * The act conferred no new, nor did it affect any existing rights. Mortgages were assignable before the enactment of the statute of 1877, but because it had been declared that there was no statute authorizing such assignments to be recorded, so as to make such records notice, it was deemed expedient to afford the means whereby assignees of real estate mortgages, as well as innocent purchasers of mortgaged real estate, might be protected. The reason and policy of the act applied with as much force to assignments such as that here involved as to those which should be made after it took effect. The act applied by its terms to 'any mortgage of record' at the time it took effect, the same as to any mortgage which might thereafter be recorded. The Morrison mortgage was a mortgage of record at the time the act in question took effect, but it had not been assigned to Tomlinson except as the indorsement of the note carried an equitable interest in the security. The act of 1877, as applied to that mortgage, and all others similarly held, impaired no existing right of any assignee; it simply enlarged the opportunities of assignees for giving notice of and protecting existing rights, and it left to each the option to procure and record an assignment of his mortgage in the manner provided, or to take the chance that his assignor, who held the legal title to his security in trust for him, would act in good faith, and not release the mortgage to his detriment. * * * An assignee of a mortgage, who had an assignment duly acknowledged prior to the taking effect of that act, needed only to put his assignment of record within the time prescribed in §2931 R. S. 1881, or before the intervention of an innocent purchaser for a valuable consideration. On the other hand one who occupied the position of an equitable assignee merely had it in his power, in case the assignor of the debt refused voluntarily to make a legal assignment of the mortgage, to compel the execution of all

such muniments of title as were essential to the complete protection of his right. [Citing authorities.] Taking into account the circumstances which occasioned the enactment of the statute under consideration, together with what appears upon the face of the act itself, and we entertain no doubt of the propriety of applying it to transactions such as that. involved in the present case. * * * In the present case the mortgage was released by the only person who, so far as the record disclosed, had the legal right or authority to execute a release."

In the case of *Hopping* v. *Burnam*, 2 Greene (Iowa), 39, the question arose as to whether deeds executed prior to the passage of a registry law by the legislature were subject to its provisions. It was held that they were. The supreme court of Iowa, in passing upon the question in that appeal, said: "He [Hopping] was by no means exempt from its recording requirements merely because his deed was executed before the law took effect. Its provisions were not limited to deeds subsequently executed, but they extended equally to deeds then *in esse*, to those previously executed and acknowledged but not recorded. And still the law did not retroact, it did not require deeds to have been recorded before it took effect, but it assumed a regulation over them from and after that event."

There is certainly a similarity between the facts in the case of *Connecticut, etc., Ins. Co.* v. *Talbot*, 113 Ind. 373, and those of the case under consideration. We have no reason to doubt the correctness of that decision and believe that the rule as there asserted, under the facts, was properly enforced. Consequently, that decision is entitled to much weight in the solution of the question now involved. As said in that case, the act in question applies by its terms to "any mortgage of record" at the time it took effect, the same as it does to those thereafter recorded.

Appellant's mortgage was of record at the time the law went into force, appearing as it did upon the public records

in the name of Bonebrake as the mortgagee and beneficiary thereof, and it had not been transferred to appellant by him in any manner except by the equitable assignment which resulted from the indorsement of the notes secured thereby. After the act in controversy went into force some four years passed before Diggs, who had acquired the land by the sale under the foreclosure of the senior mortgage, conveyed it to Moorman. The latter seems to have held the premises from 1881 to 1888 when he died testate, the owner thereof. The term of his ownership embraced a period of seven years. In 1889, the lands owned by him at his death were partitioned among the several devisees under his will and appellant eventually became the owner in severalty of the lands in question.

It appears that a period of over twelve years had elapsed after the registration act of 1877 went into effect before the realty was assigned to appellee. It was during this period of time that all of the above changes or transactions, in respect to these lands, occurred. Ample time, under the circumstances, certainly was afforded to appellant, after the taking effect of the act, and before the intervention of the rights of innocent parties took place, to have placed upon record the assignment of its mortgage. This, as we have seen, it neglected to do. It was bound to know the purpose and requirements of the statute in question. It certainly was aware of the fact that its mortgage was of record in the name of Bonebrake as the mortgagee, and that the assignment through which it claimed its right to the mortgage was a secret equity which it held undisclosed by the public records. Notwithstanding all of this, appellant seems to have stood by and does not appear to have taken any steps to procure and record an assignment at any time after the law went into effect and thereby enable all persons who thereafter might have dealings, in respect to the lands in question, to be apprised, by means of such recorded assignment, that, at the time of the foreclosure of the senior mort-

gage, appellant was the equitable assignee of the junior mortgage, and ought to have been a party to that action instead of Bonebrake. Appellant, it appears, did nothing but hold the notes indorsed to it by Bonebrake for a period of about seventeen years, and then instituted this action to enforce rights under its mortgage against lands which at that time had passed into the hands of appellee and had been held by her for about four years. Such laches, under the circumstances, would seem to be inexcusable.

It was said in the case of *Connecticut, etc., Ins. Co.* v. *Talbot,* 113 Ind. 373, that the mortgage there in question was released by the only person, so far as the records disclose, who had the legal right to release it. It may be said in the case at bar that an examination of the public records of the offices of the clerk and recorder of Jay county would have disclosed that Bonebrake, the junior mortgagee of record, had been made a party defendant to the Diggs foreclosure action, and his equity of redemption barred by the decree therein. So far as the record in the recorder's office disclosed, he, and not appellant, was the person that Diggs was legally required to make a party defendant to his said action in order to cut off the right of redemption which existed under the junior mortgage.

With all of these facts revealed by the public records, a person subsequently acquiring the lands as a *bona fide* purchaser for value, as it is claimed appellee is shown to be, had a right, we think, to rely upon such facts without further inquiry, and is entitled to hold the realty in controversy as the act of 1877 declares "free and discharged" of the lien of appellant's mortgage. If any of its existing rights have been impaired or cut off, such results can not be attributed to the statute, but are the consequences of appellant's own neglect or failure to comply with its requirements in not recording the assignment of its mortgage after the taking effect of the law and before the intervention of *bona fide* rights.

We have examined the authorities cited by appellant's learned counsel and have fully considered their argument, but we are satisfied that the rule announced in the Talbot case was correctly asserted and that the decision of this court therein is applicable to the facts in the case before us, and must be accepted as controlling in favor of appellee upon the question as here involved, and appellant must be held to be precluded from enforcing its mortgage against the lands of appellee in the event the latter can be considered as occupying, in respect thereto, the position of an innocent purchaser for a valuable consideration.

It is next insisted that neither appellee nor Moorman, her ancestor, is shown to have been a good faith purchaser of the land in dispute. Diggs, who was a purchaser at his own sale, it is also claimed, can not be considered as a good faith purchaser without notice, because, at the time he purchased the premises at the sheriff's sale, there was no law in force requiring assignments of mortgages to be recorded. It is said that Moorman is not shown by the special finding to have actually paid the purchase price or consideration by which he secured the conveyance of the land from Diggs, and for this reason it is contended that he can not be held to have been a *bona fide* purchaser for value. As to appellee, counsel say that she simply holds the land by devise and partition, never having surrendered anything of value for it, having succeeded only to the rights of her said ancestor; therefore it is insisted that she can not be deemed to be a purchaser for a valuable consideration.

The contention is also further advanced that there are no facts to show the absence of knowledge or notice on her part in respect to the rights of appellant at the time the land was assigned to her in the partition proceedings. It is true, as a general rule, that the payment of the purchase price or consideration of property by the purchaser, before notice, either actual or constructive, of prior equities or rights existing against it, is an essential requisite, in order to defeat such

equities or rights; and this doctrine is well affirmed by the decisions of this court. *Holcroft* v. *Hunter*, 3 Blackf. 147; *Lewis* v. *Phillips*, 17 Ind. 108, 79 Am. Dec. 457; *Rhodes* v. *Green*, 36 Ind. 7; *Kuhns* v. *Gates*, 92 Ind. 66; *Anderson* v. *Hubble*, 93 Ind. 570, 47 Am. Rep. 394; *Petry* v. *Ambrosher*, 100 Ind. 510. It is possibly true that the facts embraced in the special finding do not sufficiently disclose, without resorting to inference, that Moorman actually paid the purchase price or consideration for the lands in dispute before notice of appellant's right. We pass this particular question, and leave it undecided, as to whether either Diggs or his grantee, Moorman, can, under the facts and the law, be regarded as *bona fide* purchasers for value, and address ourselves to the inquiry: Is appellee, under the facts relative to the proceedings in partition whereby the land in question was assigned to her in severalty, entitled to be regarded and protected as a good faith purchaser for a valuable consideration?

The facts show that after the death of Moorman partition proceedings were instituted in March, 1889, in the Randolph Circuit Court to divide the real estate owned by him at the date of his death and disposed of under his will. In these proceedings, certain lands belonging to his estate, together with those in controversy, were set off jointly, it appears, to certain devisees under his will, appellee being included as one of the parties to whom such lands were so partitioned. In September, 1889, the land so partitioned to her and others, under the first proceedings, were again partitioned by an action in the Wayne Circuit Court, and the realty now involved was in that action set off and assigned in severalty to appellee, Mrs. Whitson, in lieu of all of the undivided interest which she held in common with her cotenants in the land set off to her and them jointly in the first partition proceedings. This latter partition appears to have been confirmed by the court, and appellee entered upon

the land so assigned to her, and from that time on has continued to enjoy it in severalty as her own.  If she and her cotenants, after the first partition of the lands of their ancestor, by mutual agreement, had made partition of the land set off to them jointly, and which they held as tenants in common, by executing deeds conveying to each other in severalty certain parts thereof, certainly then, under such circumstances, the consideration of the conveyance executed by appellee to her several cotenants would be their conveyances to her of their undivided interest in the share or part assigned to her.  By her conveyance, under the circumstances, she would have surrendered and given up all of the interest and rights which she actually held and owned in the undivided lands to her several cotenants for their interest and rights in the particular part assigned or conveyed to her.  Surely it could be said, under such circumstances, that she had given up or surrendered a valuable consideration for the particular tract conveyed to her, and in the absence of notice as to any secret equities or liens existing against it, she would unquestionably be entitled to be protected in like manner as a *bona fide* purchaser of lands for value.  Precisely the same principle must apply and control in respect to such a question when lands are assigned to cotenants in severalty in partition proceedings by commissioners appointed under the order of the court.  It is evident, then, we think, that appellee, by surrendering and giving up all her interest and title in and to the lands which were devised to her, in consideration of the assignment to her in severalty of the particular tract in controversy, must be held to have parted with value for the land against which appellant is now seeking to enforce its lien.  She certainly devested herself of or abandoned, under the circumstances, valuable rights or interests which she held in common with her cotenants, and accepted in lieu, or in consideration thereof, the land now in dispute.  This, in

the absence of notice, is sufficient to constitute her a purchaser for a valuable consideration.   16 Am. & Eng. Ency. of Law, 837.

At least it can be said, we think, under the facts, that by reason of appellant's failure to comply with the requirements of the registry law in question, appellee has been placed in a position where she must suffer loss if appellant prevails in this action, and in the absence of notice upon her part, at the time of the partition proceedings in question, of appellant's unrecorded assignment, she is entitled to invoke the rule which applies to and protects an innocent purchaser for value. The statute, as it will be seen, does not operate against the holder of an unrecorded assignment where the purchaser claiming title to the premises through a judicial sale has actual notice of the unregistered assignment. The question, then, arises, under the circumstances, upon whom rests the burden of showing actual notice in regard to the unrecorded assignment in controversy? Was the appellee, in addition to showing that she was a purchaser for a valuable consideration, required also to establish the negative fact that she had no actual notice of the assignment of the mortgage at the time of her purchase? Or did it devolve upon appellant, under the statute in question, to allege and prove, as an affirmative fact, that appellee had such notice?

Appellee in her answer negatives the fact of notice or knowledge on her part of the equities, rights, or claims of appellant at the time the land was assigned to her.

The general rule supported by many authorities seems to be that, in cases where a purchaser of lands rests his claim upon the fact that he is one in good faith, he is required in his pleading setting up such a defense to deny that he had, at the time of the payment of the purchase price or consideration thereof, any notice of the secret, existing liens, equities, or rights sought to be enforced against the property in his hands. *Gallion* v. *McCaslin*, 1 Blackf. 91; *Make-*

*peace* v. *Davis*, 27 Ind. 352; *Gallatian* v. *Cunningham*, 8 Cow. 361; *Seymour* v. *McKinstry*, 106 N. Y. 230; 16 Am. & Eng. Ency. of Law, 836.

Another rule supported by the authorities is that the onus is cast upon a party who relies upon an unregistered deed or instrument, against one who claims to be a purchaser for a valuable consideration, without notice, of the property sought to be affected by such unrecorded deed or instrument, to allege and prove that such purchaser had notice or knowledge, at the time of his purchase of such deed or instrument.

The payment of a valuable consideration by such purchaser, as the authorities assert, raises a presumption in his favor of good faith in so doing; or, in other words, that at the time of the payment he had no knowledge of unrecorded titles, liens, equities, or rights of other persons, and the burden therefore rests upon the party asserting the contrary to overcome such presumption by proving actual notice. *Morris* v. *Daniels*, 35 Ohio St. 406; *Center* v. *Bank*, 22 Ala. 743; *Bartlett* v. *Varner's Executor*, 56 Ala. 580; *Pollak* v. *Davidson*, 87 Ala. 551; *Spofford* v. *Weston*, 29 Me. 140; *Ryder* v. *Rush*, 102 Ill. 338; *Rogers* v. *Wiley*, 14 Ill. 65; *Brown* v. *Welch*, 18 Ill. 343; *Bush* v. *Golden*, 17 Conn. 594; *Pomroy* v. *Stevens*, 52 Mass. 244; *Newton* v. *McLean*, 41 Barb. (N. Y.), 285; Fisher's Law of Mort. (5th ed.), §1105; White & Tudor's Leading Cas. in Eq. 99; 16 Am. & Eng. Ency. of Law, 842.

This principle has been frequently recognized by this court in cases wherein it was sought to foreclose an unrecorded mortgage against a subsequent purchaser for value of the mortgaged premises. In such cases it is held that, in order to enforce the unrecorded mortgage against the property in the hands of such purchaser, the plaintiff must allege and prove that the subsequent purchaser of the mortgaged premises had actual notice of the existence of the unrecorded mortgage at the time of his purchase. *Magee* v. *Sanderson*,

10 Ind. 261; *Peru Bridge Co.* v. *Hendricks*, 18 Ind. 11; *Faulkner* v. *Overturf*, 49 Ind. 265; *Scarry* v. *Eldridge*, 63 Ind. 44; *Hiatt* v. *Renk*, 64 Ind. 590; *Hoes* v. *Boyer*, 108 Ind. 494; *Schmidt* v. *Zahrndt*, 148 Ind. 447.

It follows therefore, and we are of the opinion that, under a true interpretation of the registry act of 1877, in connection with §2931 R. S. 1881 and Horner 1897, §3350 Burns 1894, the burden in this case rests upon appellant to prove actual knowledge upon the part of appellee, at the time the land was assigned to her in the partition proceedings in question, of its unrecorded assignment, in order to excuse itself of its failure to register the same as the law provided. The burden, therefore, being upon appellant to show that appellee had such notice and the special finding being silent upon that question, under the well settled rule applicable to special findings and verdicts, such silence must be regarded as the equivalent of an express finding in her favor upon the fact of notice. *Travelers Ins. Co.* v. *Patten*, 98 Ind. 209.

Questions relative to the sufficiency of the evidence to sustain the finding of the court, and also in regard to the competency of certain witnesses, are discussed by counsel for appellant. Counsel for appellee, however, insist that these questions are not presented for our consideration for the reason that what purports to be a bill of exceptions, embracing the evidence and the rulings of the trial court in admitting the evidence of the witnesses in controversy, can not be deemed to be a part of the record. It is disclosed by the transcript that appellant's motion for a new trial was overruled on May 6, 1896, and sixty days were then granted to file bills of exceptions. The trial judge certifies in the bill under consideration as follows: "Be it remembered, etc., that a bill of exceptions was presented to me on June 13th, 1896, and within the time given for that purpose, and I indorsed the time of presentation thereon, which bill being incorrect, now upon my own motion I have amended the

same by striking out part thereof and adding thereto and embracing therein all of the evidence." This document was signed by the judge and filed on August 28, 1896. This bill, when tested by the certificate of the trial judge, certainly is not shown to be the same bill presented to him on June 13, 1896. The certificate states that, not this bill, but "a bill" was presented to the judge on that date. The certificate of the clerk also discloses that the bill, signed and filed on August 28th, is not the one presented on June 13th, because the clerk certifies that the longhand manuscript of the evidence embraced in the bill in dispute was filed in his office on July 28, 1896, a month and over after the bill of June 13th was presented. At what time the bill, which purports to be a part of the record, was presented to the trial judge for his signature, does not affirmatively appear therefrom, and, as it was not filed until August 28th, which was after the expiration of the sixty days allowed, it cannot under the well settled rule, be considered as a part of the record; and therefore the questions depending thereon must be dismissed without consideration. Eubank's Manual, §31.

There being no available error in the judgment, it is therefore affirmed.

### ON PETITION FOR REHEARING.

JORDAN, J.—Appellant petitions for a rehearing upon the grounds, substantially, that the court erred, (1) in holding that the assignment of the mortgage in suit was subject to the registry act of 1877; (2) in holding that appellee, Whitson, was a *bona fide* purchaser; (3) in holding that the burden of proving that she had notice rested upon appellant; (4) in deciding that the evidence was not in the record.

Counsel in their brief filed in support of this petition disclaim any desire to re-argue the proposition originally advanced that the decision in the case of *Connecticut, etc., Ins. Co. v. Talbot*, 113 Ind. 373, is unsound; with the exception, however, that it is again insisted that a registry

law will only be given a retroactive effect when by its express terms it allows a reasonable time after its passage for the registration of instruments executed prior thereto. It was affirmed in the Talbot case that when the provisions of the act of 1877, and the circumstances which led to the enactment of that law, were taken into consideration, there could be no doubt of its being applicable to the transaction in that case.

It is not true, because a registry law is not made in plain terms to apply to deeds and other instruments previously executed, it consequently must be interpreted so as to relieve the holders of such instruments from recording them. In deciding that the act of 1877 applied to mortgages of record at the time it took effect, we were not necessarily required to give the statute a retrospective construction. Neither can it be successfully asserted that such holding disturbs any vested rights of appellant. The mortgage, which it held by assignment, was of record when the law in question went into effect, but the assignment thereof had not been recorded. It certainly can not be said that it is a strained construction to hold that the law applied to such mortgages and required the previous assignments thereof to be recorded. The act simply assumed a regulation over such previous assignments as the one in question so as to require them, under its provisions, to be recorded, as we held, within a reasonable time after it went into force. To construe the act in controversy as applying only to mortgages of record, which were assigned after its passage, would, as held in the Talbot case, defeat the very object of the legislature in the remedy intended. Had the legislature intended, by the enactment of this law that it should be limited only to assignments made after its passage, it is not unreasonable to presume that the lawmakers would have used apt words to express such intention instead of employing terms which apply equally to assignments *in esse* at the time of its passage, as they do to those made thereafter. Having again carefully considered the authorities and arguments presented by counsel for appellant, we are

still satisfied with the conclusion reached at the former hearing in respect to the construction of the act of 1877, and that, under the facts, appellee Whitson must be deemed to be a *bona fide* purchaser, and that the evidence, for the reasons stated in the original opinion, is not in the record.

It is next earnestly contended that we erred in holding that the burden of proving that appellee had actual notice of the existence of the assignment at the time of her purchase rested upon appellant. The latter was the plaintiff below, and its mortgage, as we held, was subject to the provisions of the registry statute in question, and, having failed to place the assignment thereof upon the public records, certainly then, in order successfully to enforce its mortgage lien against the premises in the hands of appellee, it was required both to allege and prove that she, at the time of her purchase, had actual notice of the unregistered assignment. Appellant, under its complaint at least, undertook to advance the claim that the land held by her was subject to its mortgage; hence, in view of the statute, to sustain this claim against her, under the circumstances in this case, it was incumbent upon it to produce proof to show that she was affected at the time of her purchase by either constructive notice, such as the public record would have afforded in case the assignment had been registered, or by actual knowledge thereof; otherwise, in the language of the law itself, she would hold the premises "free and discharged of the mortgage lien." Or, in other words its failure to record the assignment as the law provided would render the mortgage void as against appellee, unless it could be shown that she had actual notice. §2931 R. S. 1881, and Horner 1897, §3350 Burns 1894.

The right of appellant to foreclose its mortgage against the lands in her hands, under the circumstances, was, to an extent at least, based upon the fact that she had notice of the unregistered assignment. The actual notice mentioned in the statute in question was intended to be equivalent to the constructive notice which would be afforded to subsequent

purchasers or mortgagees by recording the assignment. If the subsequent purchaser has either the constructive notice which the record affords, or, in its absence, actual notice of the unrecorded assignment, then the protection given him by law, by reason of the fact that he is a purchaser for value, will be destroyed. A purchaser who has actual notice of an unregistered instrument may be said to be in the same condition as if he were affected with the knowledge which the record of its registry would have furnished. While actual notice of an unregistered deed or instrument will be as effectual as that furnished by its formal registration, still the former notice, in order to be effectual, must be brought home to the party to be affected thereby. Wade on Notice, §231; *Curtis* v. *Mundy*, 44 Mass. 405.

We have, in support of the rule which we affirmed at the original hearing, in respect to the burden of proving notice, supplied our opinion with a citation of the decisions of this court in regard to the rule recognized and upheld in the foreclosure of an unrecorded mortgage against a subsequent purchaser or mortgagee. In the case of *Schmidt* v. *Zahrndt*, 148 Ind. 447, it is said, on page 455 of the opinion: "The rule in this State is, that when it is shown, by the complaint or cross-complaint to foreclose a mortgage, that any of the defendants are subsequent mortgagees, that it must be alleged and proved that they took said subsequent mortgage with actual notice of the mortgage sued upon, or that it was recorded within the time fixed by statute, or before the execution of the subsequent mortgage."

This last decision, and the others which it follows, disclose the interpretation in respect to the proof of notice which this court has given to §2931 R. S. 1881, and Horner 1897, §3350 Burns 1894, which requires that every conveyance or mortgage of lands, or any interest therein, shall be recorded, etc., and if not so recorded, such instrument shall be fraudulent and void against any subsequent purchaser or mortgagee in good faith for a valuable consideration. Cer-

tainly there can be no sufficient reasons assigned for asserting a different rule to control in cases, like the one at bar, involving the right of the foreclosure of a mortgage, the assignment of which is governed by the registry act of 1877.

Appellant's mortgage, on account of its neglect to record its assignment, could have no force against appellee except upon the condition that it brought actual notice home to her.

It is true, as a legal proposition, that whenever, in the course of litigation, it becomes essential to affect a party with notice of a fact, the burden of proving such notice is upon the party who is required to allege it in his pleadings.

It must be remembered that appellant, in this case, was the plaintiff or actor in the lower court, seeking to enforce the right of foreclosing its mortgage against appellee's land, and, in order to exempt its mortgage lien from the results which the statute declares shall follow a failure to register an assignment, it was, as the authorities affirm, required to bring actual notice home to appellee. The latter was not seeking to enforce any right. By her answer she simply sought to defend against the right which appellant, under its complaint, asserted; and, while it is true the burden was upon her to prove that she was a purchaser for value, otherwise appellant would have prevailed regardless of the question of notice. The mere fact, however, that she denied in her answer what appellant was required to prove, did not, under the circumstances, cast the burden upon her of proving such negative. The rule which we affirm upon the point involved depends in a manner upon the interpretation of the statute, and, hence, the cases of *Giberson* v. *Jolley*, 120 Ind. 301, and *Schmueckle* v. *Waters*, 125 Ind. 265, and others of like character cited by appellant, which assert a rule applicable to commercial paper, are therefore not in point. Neither are those which affirm that, where a negative fact is essential to the existence of a right sought to be enforced, the party claiming the right has the burden of proving such negative.

We adhere to the conclusion reached at the former hearing upon the point involved, and the petition is therefore overruled.